PIERRE & FT. PIERRE BRIDGE RAILWAY COMPANY, Respondent, v. STUART et al, Appellants.

(168 N. W. 33.)

(File No. 4235.   Opinion filed June 11, 1918.   Rehearing denied July 24, 1918.)

1. Taxation—School District, Extension of Boundaries, Beyond Two Mile Limit—Conspiracy to Tax Additional Property to Pay Existing Debt, Invalidity of—Statute.

Findings of trial court to the effect that petitioners for extension of boundaries of an independent school district, beyond the two mile limit referred to in Laws 1907, Ch. 135, Sec. 176, Subd. 6, conspired to enlarge the boundaries of the district for the sole purpose of raising funds from taxation of such additional property to provide for payment of an existing school district indebtedness, and solely in the interest of such tax paying petitioners, and not in the interest nor for benefit of education, etc., held, supported by the evidence. Provisions of such chapter construed.

2. Taxation—Unlawful School Taxes, Recovery Back, Annulment of Proceedings for Fraud—Laches.

In a suit by a bridge company against a county treasurer and an independent school district, to recover back taxes paid by plaintiff and illegally levied, held, that laches cannot be imputed to plaintiff, suit having been commenced seventeen months after decision of the committee (provided for in Laws 1907, Ch. 135, Sec. 176, Subd. 2) granting a petition for addition of adjacent territory to defendant school district,

and within 6 months after plaintiff made its first payment of taxes thereunder.

3. Taxes—Illegal School Taxes—Suit to Recover Back, and Annul Proceedings, Whether Collateral Attack.

    A suit by a bridge company to recover back illegal taxes levied, and paid by it, and to annul tax proceedings involving an alleged illegal addition of adjacent territory to an independent school district, is a direct attack upon such proceedings.

4. Taxation—Illegal School Taxes, Recovery Back—Limitations—Statute Construed.

    A suit to recover back school taxes illegally assessed, and paid under protest, the first installment having been paid in March, suit having been commenced in September following, was barred by Laws 1915, Ch. 289, requiring that actions of this character shall be begun within 30 days from date of payment, and providing that there shall be no other remedy therefor.

5. Taxation—Illegal School Taxes, Recovery Back—Taxes Paid Subsequently to Suit—Amendment of Pleadings, Stipulation For Adjudication Under Supplemental Complaint—Recovery Allowed, Notwithstanding Limitations—Statute.

    In such suit where several payments of taxes so assessed were made after suit began, the parties having stipulated that said subsequent payments might be brought into the case by supplemental complaint, which was done, **held**, that said Laws 1915, Ch. 289, does not require one paying taxes under protest to bring a new and separate action within 30 days after each subsequent payment, nor that he shall seek leave to file supplemental complaint every time he makes a subsequent payment and within 30 days from the time of each payment; but when such subsequent payments are made under protest and the statutory notice thereof given, trial court acted within the spirit, if not the letter, of the law, in allowing recovery for such subsequent payments upon filing supplemental complaint at time of trial.

    Appeal from Circuit Court, Stanley County. Hon. ALVA E. TAYLOR, Judge.

    Action by Pierre & Ft. Pierre Bridge Railway Company, against Oscar E. Stuart, County Treasurer of Stanley County, and Fort Pierre Independent School District, to recover back certain taxes paid by plaintiff, and to annual certain tax proceedings. From a judgment for plaintiff, and perpetually enjoying defendants, etc., and from an order denying a new trial, defendants appeal. Judgment modified, and as modified, affirmed.

*Philip & Waggoner,* and *F. W. Lambert,* for Appellants.

*A. K. Gardner,* for Respondent.

(1) To point one of the opinion, Appellants cited: Sarkness v. Board of County Commissioners, (Minn.) 154 N. W. 669; Blake v. Jacks, 108 Pac. 534, 27 L. R. A. (N. S.) 1147; Gottschalk v. Becker, 49 N. W. 715; Mayor of Valvede v. Shattuck, 19 Col. 104, 41 Am. St. Rep. 208; State v. Board of County Commissioners Wright Co., (Minn.) 148 N. W. 53; Independent School District v. District No. 37, 106 N. W. 302, 20 S. D. 349; Am. Ann. Cases 1915B, pages 1152, 1153; Seattle School Dist. No. 1 v. King County, 3 Wash. 154, 28 Pac. 376.

Respondent cited: Pederson v. Stanley County, 34 S. D. 560.

GATES, J. This action was brought by the Pierre & Ft. Pierre Bridge Railway Company to recover the first half of the school taxes for the year 1914 paid by it in March, 1915, assessed against its property by the Ft. Pierre independent school district, and for an annulment of the order hereinafter referred to. The ground of recovery was the alleged invalidity of proceedings had in 1914, whereby the boundaries of said independent district were extended to include the property of plaintiff. A better understanding of the situation may be had by reference to the attached plat.

TOWNSHIP 5 NORTH    RANGE 31 EAST

The congressional township No. 5 north, of range 31 east, of the Black Hills meridian, is a fractional township, being bounded on the east by the Missouri river. The property of plaintiff begins on the easterly bank of said river in Hughes county and ends on the westerly bank of said river in Stanley county. Prior to the proceedings had in 1914, the boundaries of such independent district were coextensive with the city limits of Ft. Pierre, which, as shown by the plat, embraced an area substantially one

mile square. The remaining territory in said congressional township was organized and known as Bad River school district No. 5. By such proceedings the boundaries of the independent district were extended to embrace the whole congressional township. The trial court entered judgment in favor of plaintiff adjudging the boundary extension proceedings to be void and of no effect, adjudging the recovery by plaintiff of the sum of $13,609.08, being for the four semiannual payments of school taxes for the years 1914 and 1915, with interest from the respective dates of payment, which taxes were levied under an assessed valuation of plaintiff's property in the sum of $612,226, and perpetually enjoining defendants from levying and collecting further school taxes on behalf of the independent district from the property of plaintiff. From the judgment and an order denying a new trial, defendants appeal.

The boundary extension proceedings were confessedly had under the provisions of section 176 of chapter 135, Laws of 1907. Subdivision 3 of said section provides:

"The committee shall consider the interest of the two corporations concerned, the convenience of the petitioners and the permanent school interest, and if they deem it proper, shall grant the petition and issue an order authorizing the attaching of such territory."

The trial court found:

"That said petitions were circulated by, on behalf of, and in the interest of certain interested taxpayers residing in said Ft. Pierre independent school district for the purpose of having the property located in said Bad River school district No. 5, including the property of the plaintiff herein, attached to said Ft. Pierre independent school district, so that the same might become subject to levy for school purposes in said city of Ft. Pierre, and thereby subject the said property to the payment of the indebtedness theretofore contracted by said Ft. Pierre independent school district and then existing, and for the purpose of relieving, to the extent of the amount raised by levy upon said property in said Bad river school district No. 5, the property of said resident taxpayers situate in Ft. Pierre independent school district, and of shifting the burden of the indebtedness theretofore incurred and then owing by the said Ft. Pierre independent school dis-

trict and the taxpayers thereof upon the taxpayers of and property in said Bad River school district No. 5, and the said taxpayers in said Ft. Pierre school district conspired and confederated together for said purposes, and for said purposes caused said petitions to be circulated and signed by certain electors of said two school districts, and for the purpose of inducing said electors to sign said petitions represented to them that the purpose of the proposed annexation of the territory in said Bad River school district No. 5 was to include plaintiff's said property in the said district, so that it could be taxed, and by that means decrease the taxes of the said electors, and the only inducement held out to said electors for the signing of said petitions was that of shifting the burden of taxation upon plaintiff herein, and caused the said petitions to be presented to and filed with the county superintendent of said Stanley county and secured certain action to be taken upon said petitions hereinafter mentioned, for the sole and only purpose of raising funds to provide for the payment of said indebtedness, which had already been incurred, and for the payment of school facilities and bearing the expense incident thereto in said Ft. Pierre independent school district, and solely in the interest of such taxpayers, and not in the interest nor for the benefit of education, nor for educational purposes."

The trial court also found that:

The committee in granting the petitions acted "in furtherance of said conspiracy and collusion to shift the said burden of indebtedness and taxation from the property situate in said Ft. Pierre independent school district upon this plaintiff and others having property in said Bad River school district No. 5, and without reference or regard to educational facilities for the children of school age in said Bad River school district No. 5 or Ft. Pierre independent school district."

The trial court also found:

"That no changes were made in the school facilities afforded the children of school age in said Bad River school district No. 5 by the said attempted annexation of said territory to the said Ft. Pierre independent school district and none were intended or contemplated, but said children have, since the pretended annexation of said territory, attended the public schools in the city of

Ft. Pierre as they had been wont to do before the pretended annexation of said territory; that of the said children practically all reside in the immediate vicinity of the said city of Ft Pierre."

Subdivision 5 of said section of the school law provides for the recording of the decision of the committee by the clerks of the respective boards. Subdivision 6 provides:

"Such territory shall, from the date of the order authorizing such change, be considered a part of the independent district of [or] the said school district;

"Provided, that such order shall not be issued until after the action and decisions of the committee are recorded by the board of education and the district school board."

The trial court found:

"That the said alleged action and decision of the committee was not recorded by the board of education or the district school board, or any of the officers of either of said districts, prior to the making of said pretended order by said committee, nor at any other time, and there never has been any record of any kind or character made in the records or books of the said Bad River school district No. 5 of the said alleged action or decision of the said committee, and the order attempted to be made by said committee purporting to attach said Bad River school district No. 5 to said Ft. Pierre independent school district was so made without jurisdiction or authority by said committee."

A further proviso of subdivision 6 of said section provides:

"Provided, that territory more than two miles from the limits of such city or town shall not be considered adjacent territory to which the provisions of this section may apply unless the electors of such territory shall unanimously petition to be thus attached and considered as adjacent territory."

The trial court found:

"That at the time of the filing of said petitions and prior thereto there were electors residing in said Bad River school district No. 5 beyond and outside of the two-mile limit, who had not and did not sign the said petition, and the court finds that John Rea, Homer Cannon, and Mrs. Homer Cannon were at said times electors of said Bad River school district No. 5, residing beyond said 2-mile limit, who did not sign the said petition."

The trial court further found that which is perfectly obvious from the plat, viz:

"That the said city of Ft. Pierre is not near the center of said township No. 5, but is situate in the extreme southeast corner thereof, and hence the greater portion of the territory pretended to be attached by said proceedings lies outside and beyond the two-mile limit."

The court thereby negatived the claim of the appellants that the last proviso of said subdivision 6 is applicable to the situation.

[1] The argument of appellants rests chiefly upon the alleged insufficiency of the evidence to sustain the findings Respondent insists that the court should not look into this question because the record affirmatively shows that appellants are not entitled to have the sufficiency of the evidence considered. It appears that the notice of intention to move for a new trial specified that the motion was to be based upon a settled record and upon the judgment roll. The motion was heard and denied on June 8, 1917. The record was not settled until July 5, 1917, and the settled record was not filed until July 16, 1917. There is therefore nothing before us to show that the trial court considered the settled record when it acted upon the motion for a new trial. The situation is similar to that in Hardin v. Graham, 36 S. D. 525, 155 N. W. 782; Id., 38 S. D. 57, 159 N. W. 895, where under similar circumstances we held that we could not consider the sufficiency of the evidence to support the findings. But if we should pass on that question it would avail appellants nothing, for we could not escape the correctness of the finding of the trial court as to the fraudulent nature of the acts by which the independent district was sought to be enlarged.

[2, 3] Appellants contend that the action was barred by plaintiff's laches, and that the order in question cannot be collaterally attacked. The action was begun 17 months after the decision of the committee, and within 6 months after plaintiff made its first payment of taxes thereunder. In so far as the action sought an annulment of the proceedings, we are clear that laches cannot be imputed to plaintiff because the action is based in part, at least, upon fraud. It scarcely needs to be asserted that this is a direct attack upon the proceedings.

[4, 5] Appellants contend that recovery of the two 1914 installments of taxes was improperly allowed because the action was not timely begun. In so far as the first payment is concerned we think appellants' position is well founded. The action was begun in September, 1915, before the second installment of the 1914 taxes was paid, the first installment having been paid in March, 1915, and the original complaint sought recovery only for that payment. Chapter 289, Laws 1915, requires that actions for recovery of taxes paid under protest shall be begun within 30 days from the date of payment, and provides that there shall be no other remedy therefor. By their answer the defendants pleaded this 30-day limitation, and by motion for dismissal of the action at the close of plaintiff's testimony and again at the conclusion of all of the testimony they presented this question. Were it not for the provisions of that act we should affirm the judgment in whole, but we think that under the terms of that act the trial court should have denied recovery for the first installment of the 1914 taxes. In Zimmerman v. Corson County, 39 S. D. 167, 163 N. W. 711, we held that act applicable to the situation there presented. We think it is applicable here for the reason that it provides among other things:

"But in all cases in which, for any reason it shall be claimed that the tax [was] collected or about to be collected, was or is wrongfuly or illegally collected or about to be collected for any reason whatever, in whole or in part, the remedy shall be as above provided and in no other manner."

[6] While the answer of defendants pleaded that the second installment of the 1914 taxes was paid November 2, 1915, and that no action for its recovery was brought within 30 days from such payment, the original complaint naturally contained no allegation to which that portion of the answer was responsive. By stipulation the payments of the second installment for 1914 and of the two installments for 1915 were brought into the case by supplemental complaint. We are not inclined to hold that the act of 1915 required respondent to bring a new and separate action within 30 days after every subsequent payment, nor even that it compelled respondent to seek leave to file a supplemental complaint every time it made subsequent payments and within

31—Vol. 40, S. D.

30 days from the time of each payment. When it paid its subsequent taxes under protest and gave the notice that the law required, and when the grounds of the protest were the same as the grounds of the pending action, the trial court acted within the spirit of this statute, if not within its letter, in allowing a recovery for such subsequent payments upon the filing of a supplemental complaint at the time of the trial.

The judgment appealed from is modified by striking from the money judgment the item of $2,938.69, with interest from March 31, 1915; and as so modified it is affirmed. No costs will be taxed in this court.

The judgment was entered in February, 1917. At that time the 1916 taxes, if any were levied upon the property of appellant for the benefit of the defendant school district, were payable. Nothing appears in the record or briefs in regard thereto. Therefore, in affirming the judgment, we do not pass upon the question whether, in view of the act of 1915, the trial court could lawfully enjoin the collection of those taxes.