---

HINES, Director General, et al., Respondents, v. SUMNER, et al., Appellants.

(186 N. W. 116.)

(File No. 4939.   Opinion filed January 10, 1922.   Rehearing denied February 16, 1922.)

1.  Actions—Consolidated School District, Setting Aside, Equity Suit For By Taxpayers—Whether Quo Warranto the Remedy—Court Procedure—Statute—Non-leave of Court, Immateriality After Judgment.

A suit in equity, in which the federal Director General of Railroads and certain resident taxpayers in two districts sought to be thus absorbed were plaintiff, together with a corporation taxpayer, to avoid the formation of a consolidated school district embracing several original districts, and to enjoin collection of taxes assessed by the consolidated district, conferred jurisdiction upon trial court to grant the relief sought; this against the contention that quo warranto was the proper remedy; that under Sec. 2260, Code 1919, as amended by Laws 1919, Ch. 289, the distinction between actions at law and suits in equity, and in forms of actions, does not prevail under our procedure; said amended section in substance authorizing suit to be brought by any State's Attorney in the states name, or on

complaint of private party, or by any person having a special
interest in the action, on leave granted by Circuit Court Judges,
when any person shall usurp, etc., any public office, etc., or
when any public officer shall have done or suffered an act
which by law shall work forfeiture of his office, or when any
association or number of persons shall act as a corporati·n
without being duly incorporated. So held where the complaint
alleged a conspiracy on the part of certain residents and tax-
payers in the principal original school district to bring about
such consolidation and thereby avoid taxation and shift the
burden thereof on property owners of the other districts.
That injunctive relief was sought does not prevent the com-
plaint being deemed appropriate to quo warranto; nor is the
fact that the record fails to disclose formal "leave of court" to
bring the action, or that such relief was not granted, material
where the question of procedure was raised after judgment
entered.

2. **Evidence—Avoiding Illegal School District Consolidation, En-
joining Tax Collection—Former Judgment Roll Establishing
Conspiracy in Consolidating Procedure, and Adjudging Recov-
ery Back of Taxes, Whether Admissible—Weight of Such
Record Evidence, Determinable by Trial Court.**

In a suit to avoid the formation of a consolidated school
district embracing three original districts, and to enjoin the
collection of taxes assessed by the consolidated district, which
suit was a sequel to certain school district annexation proceed-
ings which were annulled in a former suit (Pierre and Ft.
Pierre Bridge R. R. Co. v. Stuart, 40 S. D. 473), held, that the
judgment roll in said prior suit, which established a conspiracy
on the part of certain resident taxpayers in the principal orig-
inal school district to evade taxation and to shift the burden
of taxation to property owners in the other two districts em-
braced in the consolidation, and adjudged recovery back of cer-
tain taxes paid to the illegal district, was admissible in evidence
in the pending suit; said conspiracy being alleged as part of
the conspiracy involved in the pending suit; that the weight to
be given to said record was primarily for trial court to deter-
mine.

3. **Evidence—Setting Aside Fraudulent School District Consolida-
tion—Testimony of County Superintendent in Former Similar
Suit Re Impracticability of Maintenance of School in Outlying
Districts, Irrelevancy Of.**

In a suit to avoid an alleged fraudulent consolidation of
school districts, and to enjoin collection of taxes thereunder, the
testimony of a county superintendent of schools, and other
similar testimony, offered in a preceding suit establishing such
conspiracy and awarding return of taxes paid—to the effect that

witness at a certain district school meeting attended by electors, the advisability and practicability of maintaining school in said district (being one of the three districts in question) was considered, and that the expressions of the persons present was that such schools could not be maintained, and that they would pay a certain specified tuition per month for each pupil in school in the consolidated district, etc., was irrelevant as having little if any bearing upon present issues, and its rejections was not prejudicial error.

4. **School Districts—Fraudulent Consolidation, Defense of Curative Act—Legislative Intent to Legalize Fraud and Invade Judicial Power Not Presumed.**

In a suit to avoid a fraudulent consolidation of school districts, the defense that a curative act (Laws of Special Session 1920, Ch. 47) cured and legalized the attempted consolidation, is untenable. It was not the legislative intent to legalize a fraud; the determination of such question being a prerogative of the judicial, and not of the legislative power, and such intent will not be inferred.

5. **School Districts—Fraudulent Consolidation, Circumstantial Evidence of Conspiracy, Competency, Sufficiency Of.**

Findings in a suit to avoid an alleged fraudulent conspiracy by which several school districts were consolidated, and to recover back taxes paid, to the effect that the alleged annexation proceedings were the result of a fraudulent conspiracy on the part of the residents of the principal original district to avoid taxation and to shift the burden thereof to property owners of another of the original districts and were not for the benefit of educational facilities, that the present plan of consolidation was in furtherance of said conspiracy, was solely in pursuance of said fraudulent purposes and not for the purpose of improving the school system nor for encouragement of industrial or manual training or home economics, that the school children in the several original districts were furnished with adequate school facilities within their respective district at very small expense, while the evidence showed that it would cost one of the original outlying districts about $564 per year per child, and another of said districts about $100 per year to educate their respective children on the basis of the consolidated assessment, were supported by the evidence, though the latter was circumstantial; such evidence being competent to prove a conspiracy, and if sufficient to convince a jury is sufficient in law; following Wolfgram v. Dill, 37 S. D. 282.

Smith, J., not sitting.

Appeal from Circuit Court, Stanley County.   Hon. ALVA E. TAYLOR, Judge.

Action by Walker D. Hines, Director General of Railroads of the United States, James K. Breeden and another, and Pierre & Ft. Pierre Bridge Railway Company, a corporation, against Gaylord E. Sumner and others, and Ft. Pierre Independent Consolidated School District of Stanley County, South Dakota, to avoid the formation of a certain consolidated school district, and to recover back taxes assessed by the consolidated district and paid by the respective plaintiffs. From a judgment for plaintiffs, and from an order denying a new trial, defendants appeal. Affirmed.

*Caldwell & Caldwell,* and *F. W. Lambert,* for Appellants.

*A. K. Gardner,* for Respondents.

(1) To point one of the opinion, re quo warranto as remedy, Appellants cited: Tallmadge v. Walker (N. D.), 159 N. W. 71; Pomeroy's eq. Jur. (2nd ed.) Vol. 4, Sec. 1766; 19 R. C. L. page 703; Secs. 2781-2797, Code 1919, as amended by Chap. 289, Laws 1919; McDonald v. Rehrer, 22 Fla. 198; State ex rel. v. School Dist., (Mo.) 199 S. W. 944.

Respondents cited: Gooder v. Rudd (S. D.) 160 N. W. 808; Pierre & Ft. Pierre Bridge Ry. Co. v. Stewart, 40 S. D. 473; Isaacson v. Parker, (S. D.) 176 N. W. 653; Forsyth v. Hammond, (Ind.) 40 N. E. 367.

GATES, P. J. This action was brought by taxpayers of Bad River and Antelope school districts to avoid the formation of a consolidated school district embracing Ft. Pierre independent school district, Bad River school district No. 5 and Antelope school district No. 2. It is claimed by the plaintiffs, and was in effect found by the trial court, that this proceeding was a sequel to the annexation proceedings which were annulled in Pierre and Ft. Pierre Bridge Ry. Co. v. Stuart, 40 S. D. 473, 168 N. W. 33. The map on page 476 (40 S. D.) in the official report of said case (168 N. W. 33) shows the boundaries of Ft. Pierre Independent district and of Bad River district. Antelope district adjoints Bad River district on the south. Its greatest width north and south is six miles. Its western boundary is about one mile west of the western boundary of Bad River district produced. Its northern boundary, east of the south line of Bad River district, is the southerly bank of the Missouri river running to a point approximately 21 miles east of its western boundary. The new dis-

trict contains an area of approximately 88 square miles. The number of school children in the several districts were as follows: Ft. Pierre district, 210; Bad River district, 11; Antelope district, 31. The trial court found:

"That said children were at all times mentioned in the complaint furnished with school facilities, and it was at all times possible and feasible for the school boards of each of said common school districts to furnish adequate school facilities for the children within their respective districts at very small expense."

The assessed valuation of property in the districts was as follows: Ft. Pierre district, $840,080; Bad River district, $795,-556 (of which the assessed valuation of the Pierre and Ft. Pierre Bridge Railway Company was more than $700,000); Antelope district, $427,313. Ft. Pierre district has a bonded debt of $50,-000 besides a floating debt and judgments against it in large sums. Taxation in said Ft. Pierre district had become burdensome to taxpayers of the district. Neither of the other districts was in debt.

The county superintendent of schools testified that for the year 1916-17 or 1917-18 the average cost of schooling a child in the Independent school district of Ft. Pierre was $8 per month, or $72 for the school year. Let us compare this with the present cost. After the purported consolidation, a special tax levy was made upon the property in the Ft. Pierre district to apply upon its debt. We omit that from the following computations. Aside from that, a tax levy of $15,500 was spread over the whole new district for strictly school purposes. Estimating the proportions thereof to be two-fifths to Ft. Pierre district, two-fifths to Bad River district and one-fifth to Antelope district in rough approximation to the above assessed valuations, we find that the tax would be for Ft. Pierre district $6,200, for Bad River district $6,200, and for Antelope district $3,100. Therefrom it follows that it would cost former Bad River district about $564 per year to educate each of its 11 school children, while it would cost 'Antelope district about $100 per year to educate each of its 31 school children, and it would cost Ft. Pierre district only about $30 per year to educate each of its 210 school children.

The trial court made a finding with reference to the former attempted annexation proceedings to the effect that they were the

7—Vol. 45, S. D.

result of a fraudulent conspiracy on the part of residents of Ft. Pierre to evade taxation and to shift the burden of taxation to the property owners of Bad River district and were not for the benefit of educational facilities. It also found that the present plan of consolidation was in furtherance of the same fraudulent conspiracy, and further found:

"That the said plan for consolidation was solely in pursuance of the plan and conspiracy of said persons in said indepedent school district to shift the burden of taxation of the residents of said city of Ft. Pierre upon the residents and property of said common school districts, including the plaintiffs herein, and not for the betterment of educational facilities of the children residing in said school districts, or any of them, nor for the purpose of improving the school system, nor for the encouragement of industrial or manual training or home economics."

Judgment was entered vacating and setting aside the consolidation proceeding and enjoining the collection of taxes. The defendants appeal from the judgment and an order denying new trial. Five principal propositions are argued by appellants.

[1] It is first insisted that this action should have been in the nature of quo warranto instead of a suit in equity, and therefore that the trial court was powerless to grant the relief sought. The point is not well taken. The distinction between actions at law and suits in equity, and in the forms of actions, does not prevail under our procedure. Rev. Code 1919, § 2260. Whatever doubt there may have been as to the power of plaintiffs to bring this action, prior to the passage of chapter 289, Laws 1919, has been dissolved by that act. Section 2784, Rev. Code 1919, as amended by said act, reads as follows:

"An action may be brought by any state's attorney in the name of the state, upon his own information, or upon the complaint of a private party, or an action may be brought by any person who has a special interest in the action, or leave granted by the circuit court or judge thereof, against the party offending in the following cases:

"(1) When any person shall usurp, intrude into, or unlawfully hold or exercise any public office, civil or military, or any franchise within this state, or any office in a corporation created by the authority of this state; or

"(2)   When any public officer, civil or military, shall have done or suffered an act which, by the provisions of law, shall make a forfeiture of his office; or,

"(3.)   when any association or number of persons shall act within this state as a corporation, without being duly incorporated."

The italicized word "or" in the clause "or leave granted" reads "on" in the enrolled bill on file in the Secretary of State's office.   The only feature of the procedure that may not have been complied with was the obtaining of leave of court to bring the action.   The complaint shows a special interest in the action on the part of the plaintiffs, to-wit, that they are taxpayers in the two school districts sought to be absorbed, and that the individual plaintiffs, Breeden and McMullen, are respectively residents of Bad River and Antelope districts.   The mere fact that injunctive relief is also sought does not prevent the complaint being considered as appropriate to quo warranto.   The record does not disclose a formal "leave of court" to bring the action, nor, on the other hand, does it diclose that leave was not granted.   We apprehend that after judgment is rendered a court should not inquire into the question whether permission of court to bring the action has been granted.

[2]   It is next urged that the court erred in admitting in evidence the judgment roll in the case of Pierre and Ft. Pierre Bridge Ry. Co. v. Stuart, supra.   The proceedings out of which that action arose were averred to be a part of the alleged conspiracy.   The weight that should be given in this case, to the record in that case, was primarily for the court to determine. Such record was clearly admissible under the pleadings in this case.

[3]   It is next urged by appellants that the court erred in excluding the following offer of testimony from the county superintendent of schools, and other testimony of a similar nature:

"At this time the defendants offered to show by the witness on the stand that at the meeting already referred to by the witness and attended by electors from Bad River district as stated, the general subject was discussed as to the advisability and practicability of trying to maintain the country school out in Bad River district and the expression of all the persons present at that meet-

ing, and the statement of all of the persons present to the witness on the stand was that country schools could not be maintained over in Bad River district and that they would willingly pay a tuition as high as $10 per month for each pupil for schooling in the Ft. Pierre school, and that the witness attended this meeting and participated in the meeting as county superintendent of Stanley county, and that the witness in preparing the plan Exhibit A for the consolidation of this district relied in part upon the sentiment and expression of this meeting."

We do not think the ruling was prejudicial to the rights of appellants. Such proposed evidence had little, if any, bearing upon the issues.

[4] It is next urged that the curative act, chapter 47, Laws of Special Session 1920, cured and made legal the attempted consolidation. It is sufficient to state that it was not the legislative intent to legalize a fraud. The determination as to whether a transaction was or was not accomplished by fraud being a prerogative of the judicial power and not a prerogative of the legislative power, we may not infer an intent on the part of the Legislature by the passage of said act to make valid a fraudulent transaction, because to do so would be to infer a legislative intent to encroach upon the judicial power.

[5] Lastly, it is claimed that the evidence was insufficient to justify the finding of fraud and conspiracy. Space forbids a resume of the facts on this question. In Wolfgram v. Dill, 37 S. D. 282, 157 N. W. 1059, this court said:

"True, there was no direct evidence of a conspiracy; but that is not material. Circumstantial evidence is competent to prove a conspiracy, and, if sufficient to convince the jury, is sufficient in law."

Considering the geography of the districts, the physical facts above recited, the statistical matters recited, the record in the former case, and the undercover participation of leading citizens of Ft. Pierre in the scheme, we cannot conclude that the clear preponderance of the evidence was contrary to the finding of the trial court that the attempted consolidation was for the purpose of shifting the burden of taxation and not for the betterment of educational facilities.

The judgment and order denying new trial are affirmed.

SMITH, J., not sitting.