CAMP CROOK INDEPENDENT SCHOOL DISTRICT NO. 1, HARDING COUNTY, Appellant, v. SHEVLING, et al, Respondents.

(270 N. W. 518.)

(File No. 7904. Opinion filed December 17, 1936.)

*Atwater & Helm,* of Sturgis, for Appellant.
*Dan McCutchen,* of Belle Fourche, for Respondents.

CAMPBELL, J. Section 173 of the Public School Law of 1931 (chapter 138, Laws 1931) reads as follows:

*"Inclusion and Exclusion of Territory.* Territory adjacent to any independent school district may be included therein, and territory within any independent school district may be taken therefrom and included in any adjacent district in the following manner:

"1. The application for such change shall be in writing and signed by the petitioners. The application must be signed by a majority of the combined number of resident electors, and owners of real property, located within the territory sought to be included or excluded from any independent district. Said application shall

also describe the real property with reasonable certainty sought to be included or excluded from said independent school district.

"2. Upon receipt of such petition the County Superintendent of Schools shall call a committee to decide upon granting or refusing the petition. Such committee shall consist of County Superintendent of Schools, the President of the Board of Education of such Independent School District, and the Chairman of the other School District Board to be affected by such proceeding. Provided, however, that the County Superintendent shall send by registered mail written notice to all property owners of the territory to be attached or detached at their last known address at least ten days prior to the date of said meeting and all such persons so notified, shall, if they desire, appear and be heard by said committee.

"3. The committee shall consider the interests of the corporations concerned, the convenience and equities of the petitioner, and the permanent school interests, and if they deem it proper, shall grant the petition and issue an order authorizing the attachment or exclusion of such territory to or from the independent school district or school district to which it is adjacent. The committee shall also have power to adjust all property interests involved in the change which concerns the corporations interested. Before the issuance of any order authorizing the change, it shall make an equitable adjustment of any question of indebtedness involved.

"4. Record of the decision of the committee shall be transmitted to the Clerks of the School Board, and Board of Education interested for record and a copy forwarded to the County Auditor by the County Superintendent of Schools and a copy thereof if the decision be adverse to the petitioners, be served upon the petitioners by the County Superintendent of Schools.

"5. Such territory shall if no appeal be taken therefrom, take effect sixty days from the date of the order authorizing such change. Such order, however, shall not be issued until after the action and decision of the committee is duly recorded by the Board of Education and the District School Board: Provided that territory more than two miles from the limits of the city or town within the independent district shall not be considered 'adjacent territory' within the provisions of this section, unless the electors of such

territory shall unanimously petition that it be so considered: Provided further that when the inclusion of the adjacent territory within two miles of the city or town limits will leave territory in any district or districts, that it is impracticable or inconvenient for school purposes and can not be equitably attached to any other district, then upon a petition by a majority of the combined number of resident electors and real property owners in such territory, the same may be included in the independent district."

Section 81 of the same statute provides:

"*Appeal to Circuit Court.* From a decision made by a County Superintendent, by any School Board, or by a special committee created under any provision of the school law relative to a school or school district matter or in respect to any act or proceeding in which such officer, board, or committee purports or assumes to act, an appeal may be taken to the Circuit Court by any person aggrieved within thirty days after the rendering of such decision. Such appeal shall be taken by serving a notice of appeal upon the County Superintendent or on a School Board or special committee or any member thereof, and by filing such notice of appeal in the office of the Clerk of the Circuit Court in the county in which such appeal is taken, together with a bond in the sum of one hundred dollars with two or more sureties to be approved by the Clerk of said Court, conditioned that appellant will pay all costs therein that may be adjudged against him. Such notice must clearly and concisely state the decision or that part of the decision appealed from. Upon such appeal so taken, said County Superintendent of Schools or the Clerk of the School Board or the acting clerk of such special committee, shall within five days thereafter transmit to said Clerk of Courts a certified copy of the record of the decision appealed from and of the record of all proceedings had in respect to said matter and all original papers filed in his office, and upon the failure of such person so to transmit said record he may be compelled by the circuit court so to do and may be fined for neglect or refusal to transmit the same. Such officer or clerk shall receive the usual copying fees to be taxed as part of the costs of suit. The Clerk of Courts shall receive and file such notice of appeal and bond and such record so transmitted to him and docket the same in the same manner and receive the same fees

therefor as in appeals from justice courts. Any matter so appealed shall be entitled in the name of the aggrieved party as appellant, against the Superintendent of Schools, school board, or special committee, as the case may be, as respondent. Such proceedings shall be placed upon the trial calendar or note of issue and shall come on for trial at the first regular or special term of the Circuit Court following the taking of such appeal. The trial in the Circuit Court shall be de novo according to the rules relating to special proceedings of a civil nature so far as such rules are applicable and not in conflict with the provisions of this section and the court shall enter such final judgment or order as the circumstances and every right of the case may require and such judgment or order may be enforced by writ of execution, mandamus, or prohibition, or by attachment as for contempt. An appeal from any such final judgment or order may be taken to the Supreme Court within sixty days after written notice thereof shall have been given to the party desiring to appeal, which appeal shall be perfected, heard, and determined as other appeals in civil cases. Provided, however, that nothing in this section shall be so construed as to authorize any court to reverse the decision or order of any school board or officer involving the exercise of discretion and within the jurisdiction of such board or officer in the absence of manifest abuse of such discretion; provided further that an appeal as heretofore provided shall be the exclusive remedy of any person aggrieved by any such decision, unless otherwise specifically provided."

Camp Crook Independent School District No. 1 and Dryfield School District No. 13 are adjoining districts in Harding county. Brittian Catron and Annie Catron, his wife, were the owners of approximately 612 acres of land which for many years had been in the Camp Crook District. About April 1, 1933, Catron and his wife filed with the county superintendent of schools of Harding county their application and petition asking that said tract of land be taken out of Camp Crook District and included within the adjacent Dryfield District. This petition described the Camp Crook District as being a consolidated school district. Pursuant to section 173, above quoted, a committee, consisting of the superintendent of schools of Harding county, the president of the board

of education of Camp Crook Independent District, and the chairman of the district board of Dryfield District, was called together to act upon such petition. The president of the Camp Crook board and the chairman of the Dryfield board voted to grant the petition, the county superintendent of schools being opposed. After various steps and proceedings, which will be hereinafter more fully mentioned, the county superintendent made a record of the action of such committee in the matter in the following form:

"Office Of The County Superintendent of Schools,
"Harding County, South Dakota.

"Buffalo, S. Dak., July 11, 1933.

"Copy of the decision of the committee in the matter of the segregation of Brittain Catron's land from Camp Crook School District and inclusion in Dryfield School District. Said copy transmitted to the Clerks of Camp Crook School District, Dryfield School District, and the Auditor of Harding County.

"A committee composed of Mrs. Tom Moseley, President of the Camp Crook School District; Mrs. J. P. Wright, Chairman of the Dryfield School District; and Cordelia Shevling, County Superintendent of Schools following Section 173 of the 1933 School Law made the following decision in the matter of the petition presented by Brittain Catron to segregate his property from Camp Crook School District and include said property in Dryfield School District.

"1. A ballot vote of two to one gave Mr. Catron the right to segregate his property from Camp Crook School District.

"2. The committee in adjusting the property interests, and question of indebtedness decided that Mr. Catron should pay the sum of $130.05 as his pro rata share, to the Treasurer of the Camp Crook School District.

"3. Upon the County Superintendent receiving notice that the following decision has been received and filed by the Board of Education of the Camp Crook School District and the School Board of the Dryfield School District, she shall issue an order to Mr. Catron and to the Auditor of Harding County authorizing the segregation of said property."

Catron thereafter tendered his check for $130.05 to the Camp Crook District and subsequently, and on August 21, 1933, the county superintendent sent the following notice to the auditor of Harding county:

"Superintendent of Schools,
"Buffalo, South Dakota.

"August 21, 1933.

"To the Auditor of Harding County, Buffalo, S. Dak.

"This is your official notice that Section 173 of the 1933 School Law having been complied with that Brittain Catron's land consisting of 'South Half of the Northwest Quarter, the Southwest Quarter of Section Eleven, the West Half of Section Fourteen, The Lots One, Four and Five of Section Fifteen all in Township Eighteen North, Range One East B. H. M., containing approximately 612 acres' may be segregated from the Camp Crook Consolidated School District No. 1 and included in Dryfield School District No. 13.

"[Copy]                          Cordelia Shevling,
                                 "Co. Supt. of Schools."

No appeal was attempted by any one from the action of this committee, but in September, 1933, the Camp Crook District (being then represented by different counsel from those who now appear in its behalf) instituted a proceeding in the circuit court of Harding county seeking a writ of prohibition addressed to the county superintendent of schools, the county auditor, the Catrons, and Dryfield School District, to forbid them from proceeding further with the attempted segregation. In this proceeding the relator school district was described as "Camp Crook Independent Consolidated School District" and the complaint describes the relator as being a consolidated district. It appears that this proceeding was an effort to attack the action of the special committee upon the ground that the Camp Crook District was in fact a consolidated district and that section 173 of the School Law had no application and did not authorize the segregation of territory out of a consolidated district, as had then very recently been ruled by this court by an opinion filed August 3, 1933, in State ex rel Ellingson v. Williams, 61 S. D. 458, 249 N. W. 817, followed and approved

in Spencer v. Mitchell (1935) 63 S. D. 353, 258 N. W. 496. Defendants in the prohibition proceedings moved to quash and the matter came on for hearing on August 17, 1933. It is manifest from the record that the contention between the parties upon that hearing was as to whether or not the Camp Crook District was in fact a consolidated district as relator had alleged. The court apparently arrived at the conclusion that relator was not a consolidated district, as distinguished from an independent district, and the motion to quash was granted and the proceeding dismissed. Thereafter, and on October 22, 1934, the Camp Crook District, naming itself as an independent school district, instituted the present action against the county superintendent, the county auditor, the Catrons, and the Dryfield District as an equitable action, with the following prayer for relief:

"I. That all decisions, orders and records made by the pretended committee consisting of Cordelia Shevling, Pansy Moseley and Mrs. J. P. Wright, relating to the exclusion of the premises of the defendants, Brittian Catron and Annie Catron, and described in paragraph V hereof from the plaintiff district and included in the defendant district and all orders relating to an adjustment of the indebtedness of the plaintiff and defendant districts, be vacated, set aside and held for naught.

"II. That the premises described in paragraph V of this complaint be decreed to be a part of the territory embraced in the plaintiff Camp Crook Independent School District No. 1, Harding County.

"III. That the defendant, C. C. Gullickson, as county auditor, be enjoined and restrained from including the premises described in paragraph V hereof in the territory of the defendant Dryfield School District No. 13, and enjoined and restrained from paying over to the said defendant Dryfield School District No. 13, any taxes collected thereon."

Plaintiff by its complaint predicated its right to such relief upon the propositions that the action of the special committee passing upon the petition of the Catrons was void, beyond the jurisdiction, power, and authority of such committee, and was fraudulently procured by an illegal conspiracy between the Catrons and the two school board members of such committee. De-

fendants answered, denying the conspiracy, alleging full notice on the part of plaintiff as to all proceedings taken at all times with reference to the Catron petition, alleging the legality and validity of such proceedings and pleading in bar the failure to appeal and the institution of the prohibition proceedings in the circuit court, hereinbefore described. Upon the issues so joined, the matter came on for trial before the court and resulted in findings, conclusions, and judgment in favor of the defendants. The court found that plaintiff was an independent district; found that there was no conspiracy; found the facts with reference to the proceedings undertaken before the special committee, and concluded as a matter of law that the petition of the Catrons was sufficient; that all proceedings thereon were legal and valid; that the action of the committee was valid and binding and that the sole remedy of the plaintiff was an appeal from the action of such committee under the provisions of section 81, c. 138, Laws 1931, and that defendants were entitled to judgment. From such judgment and from the denial of its application for a new trial, plaintiff district has now appealed.

■ ■ First requiring determination are two contentions advanced by respondents. Respondents urge that the prohibition proceedings undertaken in the circuit court in September, 1933, bar appellant from the successful maintenance of the present action either upon the theory of election of remedies or res judicata. It is clear, as we have previously stated, that the proceeding for writ of prohibition was predicated upon the view that appellant was in fact a consolidated school district and not amenable therefore to the provisions of section 173 of the School Law. We are unable to perceive here any election of remedies. The relief sought in the prohibition proceeding was not appropriate to the actual facts and there was no election by attempting that proceeding. So far as concerns res judicata, the only fact actually determined in the prohibition proceeding was that appellant school district is an independent school district and not a consolidated school district. Its present position is in no way inconsistent with that determination, but, on the other hand, appellant now concedes and alleges the fact so to be.

■ Respondents further urge (and the court below con-

cluded) that any consideration whatsoever of the present action upon the merits is absolutely barred by the failure of the present appellant to take an appeal from the action of the special school committee on the Catron petition within thirty days, and respondents cite and rely upon that portion of the hereinbefore quoted section 81 of the School Law which reads, "An appeal as heretofore provided shall be the exclusive remedy of any person aggrieved by any such decision, unless otherwise specifically provided." To this contention there are, we think, two sufficient answers. In the first place, if the circumstances of the case are such as would properly invoke the jurisdiction of an equity court prior to the enactment of section 81 of the 1931 law, that jurisdiction cannot be ousted by legislative fiat. By section 14 of article 5 of our Constitution the circuit courts of this state are vested with original jurisdiction "of all actions and causes, both at law and in equity." By that provision the circuit courts were granted the power of exercising judicial authority over certain subject-matters in accordance with the principles of equity jurisprudence as illustrated by the decisions of English High Court of Chancery and the courts of chancery in this country possessing equal powers as of the date of the adoption of the Constitution. At that date, both in England and in this country, a recognized field for the exercise of equity jurisdiction in proper cases was the control and restraint of improper or unauthorized acts by public officers and boards. The equity jurisdiction thus vested in the circuit courts by the Constitution cannot be abrogated, impaired, or circumscribed by subsequent legislative act. This principle has been recognized and approved by this court in the following cases, among others: Jecquish v. Deming (1918) 40 S. D. 265, 167 N. W. 157; State ex rel Vig v. Lehman (1922) 45 S. D. 394, 187 N. W. 720; and Ewing v. Waddington (1933) 62 S. D. 166, 252 N. W. 28. See, also, State v. Nieuwenhuis (1926) 49 S. D. 181, 207 N. W. 77; and Chicago, M. St. P. & P. R. Co. v. Board of Com'rs (1936) 64 S. D. 297, 266 N. W. 660.

In the second place, we are of the opinion that section 81 of the 1931 School Law does not grant to a school district the right of appeal from the action of a committee assembled under section 173 of the same law to act on an application for the inclu-

sion or exclusion of territory. This precise point is not urged by counsel, but it goes to a jurisdictional matter not susceptible of being waived by the parties and is therefore proper for consideration by this court upon its own motion. Section 81 is a general section relating to appeals to the circuit court from decisions "made by a County Superintendent, by any school Board, or by a special committee created under any provision of the school law relative to a school or school district matter or in respect to any act or proceeding in which such officer, board, or committee purports or assumes to act."

The sole beneficiaries of the right of appeal thus established are described in the statute by the words "any person aggrieved." Prior to the enactment of the 1931 School Law, there was no provision for appeal to the courts from decisions of county superintendents in school matters and there was no provision (at least after the adoption of the Revised Code of 1919) for an appeal to the courts from decisions of boards of education of independent school districts. See Downs v. Bruce, etc., District (1927) 52 S. D. 168, 216 N. W. 949; Hart v. Gettysburg, etc., District (1928) 53 S. D. 381, 220 N. W. 869; Independent District No. 68 v. Diebert (1932) 60 S. D. 424, 244 N. W. 656. Appeal to the circuit court from decisions of district school boards was authorized by section 7492, R. C. 1919, which granted an appeal to "any party dissatisfied." That this section did not contemplate an appeal by the school district itself is entirely plain. The decision which could give rise to such an appeal was a decision of the governing board of the district. The district could not take an appeal save by action of that self-same governing board. To expect such district board to appeal to the court from its own decision would be most anomalous and that the statute did not contemplate or intend any such futility is evidenced by its provision that all such appeals should be entitled "in the name of the dissatisfied party as appellant against the school corporation, by its proper name, as respondent." The provision for appeal from the action of a special committee assembled to grant or refuse a petition for the inclusion or exclusion of territory was found in section 7536, R. C. 1919, as amended by chapter 177, Laws 1923. That section specifically provided that such appeal might be taken "by any or all the peti-

tioners, or by any of the school districts interested." It is apparent that section 81 of the 1931 School Law was an attempt to consolidate the provisions for appeal formerly existing in sections 7492 and 7536 of the Code and perhaps to amplify them by permitting appeals not only from decisions of this particular special committee and from decisions of school district boards, but also from decisions of any and all special committees that might come into being under the school law; from decisions of all school boards, including boards of education of independent districts, and from decisions of the county superintendent. But in thus consolidating and redrafting these Code sections, the 1931 law entirely omitted the provision of section 7536 of the Code, as amended, for appeal "by any of the school districts interested" and merely made general provision for appeal "by any person aggrieved." Prior to the enactment of the 1931 law, the words "any person aggrieved," as used in statutes permitting appeal to the courts from the action of public boards or officers, had been given a very definite and precise meaning. This court had said that in such statutes the term "any person aggrieved" embraced only such persons as might be able affirmatively to show that they were aggrieved in the sense that by the decision of the board they suffered the denial of some claim of right, either of person or property, or the imposition of some burden or obligation in their personal or individual capacity, as distinguished from any grievance they might suffer in their capacities as members of the body public. Barnum v. Ewing (1928) 53 S. D. 47, 220 N. W. 135. This definition was repeated and adhered to in Houser v. Olmstead (1930) 57 S. D. 41, 230 N. W. 224, in which case we held that the provisions of chapter 139, Laws 1927, authorizing an appeal by "any person aggrieved" from the decision of county commissioners in awarding damages for land taken for highway right of way, did not permit an appeal in the public interest or in behalf of taxpayers. We think the situation in the instant case is precisely analogous to that presented in Houser v. Olmstead. It requires no citation of authority to say that the right of appeal to the courts from action of public officers or boards must be found in and predicated upon a statute.

We are of the opinion that section 81 of the 1931 School Law by granting the right of appeal to "any person aggrieved" grants

the right only to individuals who bring themselves within the definition of those words, as previously fixed by this court in the construction of similar statutes. We do not believe the language of the statute is broad enough to authorize or permit an appeal by a school district or by taxpayers or electors of the school district in the public interest. The school district being utterly without authority to appeal to the court from the action of special committee on the Catron petition, manifestly it cannot be held to have prejudiced itself in anywise because it did not attempt so to do.

The trial court having erroneously determined that the present action was barred because of the failure of the district to appeal from the action of the special committee, our holding on this point is sufficient, without more, to require reversal. Inasmuch, however, as the cause must be remanded for further proceedings below, we deem it advisable to state our views on some of the other propositions submitted by the briefs and presented upon the oral argument.

■ The only statement in the Catron petition as to the reason for their seeking the exclusion of their lands from appellant district was as follows:

"That your petitioners have owned the above described land for many years and have constantly paid all taxes assessed against the same and that on account of the enormous tax assessed in the Camp Crook School District for the purpose of conducting the schools the land is worthless, as no one can make enough money off of the land to pay the taxes assessed against it and that for the reason stated, unless this petition can be granted, your petitioners will have to lose their said lands."

It does not appear from the record in this case that the two members of the special committee who voted in favor of the exclusion were influenced or actuated by any other or more substantial considerations. Appellant urges that the mere fact that a petitioner wishes to escape or avoid the financial burden of the school district taxes is not sufficient, standing alone, to justify the exclusion of his land from the school district at his request and that to grant such exclusion solely upon such ground constitutes an abuse of discretion, and cites the holding of this court in Hines v. Sumner (1922) 45 S. D. 93, 186 N. W. 116, where this court

sustained the action of the circuit court in voiding the formation of a consolidated school district, the trial court having found that the plan for consolidation was in pursuance of a conspiracy to shift the burden of taxation and not for the betterment of educational facilities. In this contention we think appellant, broadly speaking, is correct. The statute (subdivision 3, section 173) requires that, "The committee shall consider the interests of the corporations concerned, the convenience and equities of the petitioner, and the permanent school interests," which language is identical with the previous law on the subject as found in section 7536, R. C. 1919, amended by chapter 177, Laws 1923. That the interests and equities of the petitioner are to be considered goes without saying, but that his natural desire to get his property into a district with lower taxes cannot entirely control the situation is equally true.

██ Appellant argues that the Catron petition was insufficient to invoke the jurisdiction of the special committee in that it failed to state any valid or sufficient reason for the desired exclusion and the only reason which it did state or purport to state was not sufficient, as a matter of law, to justify the committee in its discretion in granting the petition. On this point we cannot agree with appellant. The statute (subdivision 1, section 173) does not require that the petition state any reasons whatsoever for the desired exclusion and we cannot see that the petition is harmed because it unnecessarily stated an insufficient reason. So far as concerns the reason for the desired exclusion, the petitioners are in no manner limited in urging their wishes before the special committee by the averments of the petition. The statute requires only that the petition shall be in writing, shall be signed by a majority of the combined number of resident electors and owners of real property located within the territory affected, and that it shall describe such territory with reasonable certainty.

██ Appellant further urges that the action of the special committee in the instant case was void and unauthorized because of failure to comply with the mandatory requirements of the statute. The 1931 law (section 173) is a verbatim copy of the pre-existing law dealing with the subject (chapter 177, Laws 1923, amending section 7536, R. C. 1919), save that subdivision 6 of the

pre-existing law relating to appeals is omitted, having been (in part) consolidated into section 81 of the 1931 law, as previously herein pointed out. The law is vague, unsatisfactory, and indefinite in many particulars, but from a study of its provisions the view seems to emerge that the Legislature intended that at least the following requirements should be observed (omitting mention of divers points in the law not relevant or material to the instant case): First, there must be a written petition or application complying with subdivision 1 of the section, as above stated. There was such in this case. Second, it is then the duty of the county superintendent of schools to call the special committee together, consisting of the persons designated in subdivision 2. She so did in this case. Third, at least ten days prior to the meeting of such special committee to act upon the application, the county superintendent must send written notice thereof by registered mail to all property owners of the affected territory to enable them, if they so desire, to appear and be heard by said committee. In the instant case, such ten days' advance notice by registered mail appears not to have been given, but the only property owners involved were the Catrons, husband and wife, and they were in fact present at the meeting, so we think that neither they nor any one else can take advantage of the failure to send them the formal notice required by the statute. Subdivision 3 of the statute designates the matters and elements that shall be considered by the committee and authorizes such committee "if they deem it proper" to "grant the petition and issue an order authorizing the attachment or exclusion of such territory." This subdivision also gives the committee power "to adjust all property interests involved in the change which concerns the corporations interested," and provides that, "Before the issuance of any order authorizing the change, it shall make an equitable adjustment of any question of indebtedness involved." Subdivision 4 and the first part of subdivision 5 of the section we repeat here for convenience, as follows:

"4. Record of the decision of the committee shall be transmitted to the Clerks of the School Board, and Board of Education interested for record and a copy forwarded to the County Auditor by the County Superintendent of Schools and a copy thereof if the decision be adverse to the petitioners, be served upon the petitioners by the County Superintendent of Schools."

"5. Such territory shall if no appeal be taken therefrom, take effect sixty days from the date of the order authorizing such change. Such order, however, shall not be issued until after the action and decision of the committee is duly recorded by the Board of Education and the District School Board."

From subdivisions 3, 4, and 5 it appears to be the contemplation of the statute that there shall be a written decision of the committee and a record thereof prior to the final "order authorizing the change" specified by subdivision 3, somewhat analogous perhaps to the findings and conclusions of a court prior to judgment. That such decision must be in writing is evidenced by the fact that record thereof must be transmitted to the clerks of the school board and board of education of the two districts involved "for record," and a copy thereof must be forwarded to the county auditor by the county superintendent of schools and a copy thereof must be served upon the petitioners (if it is adverse to them) by the county superintendent of schools. That this written decision is a different and separate thing from the final "order authorizing the change" is evidenced by the fact that the order authorizing the change cannot be issued until there has been an equitable adjustment of property interests and indebtedness, and manifestly no such adjustment could be made until it had first been decided to grant the petition. Further, it is provided by subdivision 4 that record of the decision of the committee shall be transmitted to the clerks of the two school districts involved, and it is provided by subdivision 5 that the order authorizing the change "shall not be issued until after the action and decision of the committee is duly recorded by the Board of Education and the District School Board." Just what the requirement that "the action and decision of the committee" shall be "duly recorded by the Board of Education and District School Board" means we are in considerable doubt. Perhaps it means that such decision should be entered at length upon their minute books. In any event, it was found as a fact by the court in the instant case as follows: "That no record was made by the Camp Crook School Board of the decision of the committee." Such record, under the statute, is a condition precedent to the issuance of the final order, and we think it is the issuance of that final order which starts the thirty-day period for appeal "by any person

aggrieved" under the terms of section 81 of the School Law. We seriously doubt whether the instrument, hereinbefore set out, bearing date July 11, 1933, apparently on the letterhead of the county superintendent of schools, and denominated "Copy of the Decision of the Committee, etc.," is in fact a sufficient written decision within the contemplation of the statute. It is in no manner signed or authenticated by the committee or any member thereof. The ballot vote mentioned in paragraph numbered 1 thereof was not taken at the meeting of the special committee held on July 11, but at a previous meeting held on May 18. The document, as a matter of fact, as the testimony shows, is simply a typewritten transcription made after the meeting of July 11 by the superintendent of schools from some rough notes she had made during the course of the meeting. We doubt if this is what the statute contemplates. Assuming, however, without deciding, that this transcript of minutes dated July 11 amounts to a written decision of the special committee within the meaning of the statute, nevertheless we think there never was in the instant case a final "order authorizing the change" within the contemplation of the statute. By the terms of the statute, that order is to be issued by the special committee after having previously made its written decision, after having adjusted all questions of indebtedness and property interests, after having transmitted its decision to the clerks of the two districts involved and to the county auditor, and after such decision has been "duly recorded" by the board of education and district school board involved. Upon the record in this case there was no such final order issued by the special committee at any time. The nearest approach to it is the document we have previously hereinbefore quoted, bearing date August 21, 1933. This document does not purport to be an order, but addresses itself to the county auditor and states that it is "your official notice * * * that Brittian Catron's land * * * may be segregated from the Camp Crook Consolidated School District No. 1 and included in Dryfield School District No. 13." It does not purport to be issued or executed by the special committee, but is simply signed by the county superintendent of schools in her official capacity. So far as the record in this case indicates, that special committee never met or assembled after their meeting of July 11. The statute requires the order to be issued by the special committee and they cannot delegate that authority to the

county superintendent of schools as appears to have been attempted by the last paragraph of the minutes of the July 11 meeting hereinbefore quoted. We are of the opinion that there has not been sufficient compliance with the requirements of section 173 of the School Law to give any validity in the instant case to the attempted action of the special committee upon the Catron petition.

The judgment and order appealed from are reversed and the cause is remanded for such further proceedings below as may be consonant with the views herein set forth.

All the Judges concur.