KLOSTERMAN et al, Respondents, v. CITY OF ELKTON, Appellant.

(220 N. W. 910.)

(File No. 5634. Opinion filed July 28, 1928.)

*E. A. Berke,* of Brookings, for Appellant.
*Alexander & Alexander,* of Brookings, for Respondents.

MISER, C. Plaintiffs, respondents herein, petitioned, in compliance with section 6555, Rev. Code 1919, to have their lands excluded from the limits of the city of Elkton. These lands consist of 159 acres in the southwest corner of the city. Upon the failure of the governing body of such city to grant the request, respondents instituted proceedings in circuit court. The circuit court rendered judgment excluding said lands. The city appealed; and upon appeal, the judgment of the circuit court excluding the lands was reversed. 46 S. D. 136, 191 N. W. 341. At 191 N. W. 342, a plat of the entire city appears. The plat on page 137 of 46 S. D. does not show the north one-third of the city. A reference to said opinion and said plats will assist in the understanding of the relative location of respondent's land and the residential and business portion of appellant city. After reversal by this court, the

case was again tried in circuit court, and again the circuit court excluded respondent's land. This judgment was based on findings that said land was agricultural land and for many years had been used exclusively for farming purposes; that neither the land nor the owners thereof nor the residents thereon received any benefit by reason of the land being included within the corporate limits; that the city received no benefit by retaining the land except tax benefit; that said land was not necessary nor useful to the city for any municipal purposes, nor that, if a sewer were established, would it be on or near the premises; that the city maintains no sidewalks nor hydrants within 1,500 feet of the residence of respondents on the land; that the land is not necessary for the extension of said city nor necessary thereto for sanitary or police protection; that respondents also suffered detriment by having their lands retained within the city limits by reason of certain restrictive ordinances prohibiting the keeping of swine and subjecting the keeping of other live stock to unreasonable restrictions, by reason of which and a confiscatory tax burden, respondent's land has substantially depreciated in market value.

The foregoing findings are supported by the evidence; although some difference will be observed between the foregoing findings and the statement of the facts in the opinion in 46 S. D. 136, 191 N. W. 341. It is also true, as stated in that opinion, that the residence of respondents is located in close proximity to the school and to the residence portion of the city; and a casual inspection of the plat might lead to the conclusion that this land of respondents might, in the future, be needed for residence purposes. The evidence in this case discloses, however, that the land would remain in the school district even though excluded from the city, and that, in all that part of the city which lies west of the Chicago, Rock Island & Pacific Railway, where respondent's land lies, there were only two residences, of which respondents' was one; that all the platted portion of the city is east of the right of way; that in going from respondents' residence to any other residence in the city except one, it was necessary to cross the railway tracks; that none of the churches or mercantile establishments were then located on the west side of said railroad tracks; and that, except for the railroad stockyards, all the land on that side of the tracks was then used for purely agricultural purposes; that be-

tween respondents' home and the nearest residences the railway right of way was fenced on both sides; that between respondents' residence and the platted portion of the city the city dump was located; that the nearest street light to the north was 60 rods away and the nearest to the east was 80 rods; that, by an air line, it was 1,400 feet from the nearest hydrant to respondents' residence, and that it would take 1,518 feet of fire hose to reach it, and this would necessitate going over or through three fences and over the railroad tracks before reaching respondents' land—yet respondents' tax bill contains a levy of 14.376 mills for city purposes exclusive of schools. Furthermore, the population of the city was 578 in 1900, 742 in 1910, 872 in 1920, and there remains within the city much platted, unoccupied land, more desirable for residence purposes and adequate to care for the city's growth for a long time.

Under the title of "Municipal Corporations," in 43 C. J. 121, we find the following:

"Under statutes authorizing severance of territory, but not prescribing the conditions therefor, or providing generally that exclusion of territory shall be ordered where the court finds that the request of the petitioners therefor ought to be granted and can be without injustice to the inhabitants or persons interested, severance has been held proper [Lorimor v. Lorimor, 196 Iowa 774, 195 N. W. 199; Thiel v. Alexandria, 41 S. D. 427, 171 N. W. 209; Johnson v. Castlewood, 40 S. D. 493, 168 N. W. 124; Pelletier v. Ashton, 12 S. D. 366, 81 N. W. 735] or improper [In re Union, 177 Iowa 402, 159 N. W. 178; In re Leroy, 135 Iowa 562, 113 N. W. 347; Christ v. Webster City, 105 Iowa 119, 74 N. W. 743; Smart v. Wessington Springs, 47 S. D. 486, 199 N. W. 468; Kreger v. Clear Lake, 46 S. D. 614, 195 N. W. 498; Klosterman v. Elkton, 46 S. D. 136, 191 N. W. 341] under the facts and circumstances of particular cases, after giving proper consideration to such matters as questions of taxation, the present or prospective need or demand, or absence thereof, of the land in question for municipal purposes, or business or residence purposes by the inhabitants of the town, and the existence or nonexistence of substantial benefit to the lands from retention within the corporate limits."

The reasons which should control in determining whether land should or should not be excluded should be civic, rather than mere reasons of revenue. The city owes a duty to extend

to "owners of and legal voters on" agricultural lands within its boundaries a reasonable share in the benefit of its police, sanitary, and fire protection. Corresponding to such duty on the part of the city, such owners have certain rights as members of the municipal corporation; and, when the city's power of tax is not divorced from its corresponding duty to the persons taxed, much of the inharmony between the interest of the people of the municipality, as represented by the city, and the interest of the petitioning land-owner disappears.

Although dealing with the analagous question of extension of boundaries, the case of Forbes v. City of Meridian, 86 Miss. 243, 38 So. 676, is valuable for its statement of reasons. In this frequently cited opinion, the court says:

"Municipalities are not devised for the purpose solely, nor chiefly, of raising revenue. The power of extending corporate limits is granted not to be resorted to for the purpose alone of increasing the income of the municipality, but in order that the benefits incident to civic government may be extended to those resident in the territory adjacent to the municipality and included in the extension, and, further, that the municipality by extending its police government, its sanitary and quarantine regulations, and its more adequate fire protection, may thereby conserve the best interests of the inhabitants within its original borders, and also give to those living in the territory included in the extension more efficient protection against devastation by fire, and by the enforcement of necessary sanitary regulations to the public health decrease the danger from disease and pestilence. These are the paramount considerations, and incidental to these the citizens included in the extension are entitled to share in common with the other inhabitants of the municipality the conveniences of sidewalks and lighted streets, fire protection, and all other advantages of city life."

This has been quoted or cited in other states in the following cases: Boise City v. Boise City Develop. Co., 41 Idaho, 294, 238 P. 1006, 1012; Warwick County v. City of Newport News, 120 Va. 177, 90 S. E. 644, 651; Alexandria v. Alexandria County, 117 Va. 230, 84 S. E. 630, 635; State v. Kansas City, 233 Mo. 162, 134 S. W. 1007, 1023. The case last cited contains an extended discussion of the question of reasonableness of an extension, and

contains the following of special importance in the case at bar, by reason of the fact that the land sought to be excluded is peculiarly agricultural in character and use:

"The mere fact that land near a city is worth more than it would be away from the city is of no importance. Farming, gardening, and dairy land is more valuable if near its market, the city. The value which comes from near proximity of agricultural or pasture land to a city is not taken account of. Courtney v. Lewisville, 12 Bush. (Ky.) 419 (1876). But, if beyond and above this mere 'proximity value' of agricultural or pasture land, the land has a value which is far in excess of that of any agricultural or pasture land no matter how favorably situated, then the land has lost its character as country land. The city has given it a position which the city gives solely to its own. It has become valuable as city property and as such property it must share the burdens of the city"—citing Vestal v. Little Rock, 54 Ark. 321, 15 S. W. 891, 16 S. W. 291, 11 L. R. A. 778.

■ If the community of persons which make up the city cannot, within a reasonable time and at a reasonable cost, make reasonably available to owners of unplatted land within the city limits those benefits which all are entitled to share in common, for the furnishing of which common benefits city taxes are levied, and if, at the same time, the city taxes are so great as to make impossible the profitable operation of such lands for the only use to which they are adapted or within a reasonable future time are likely to be needed, such unplatted lands, if agricultural in character, ought not to be retained within the city limits.

■ The duty of the trial court is prescribed by section 6558 thus:

"If upon the hearing the court shall find that the request of the petitioners ought to be granted and can be granted without injustice to the inhabitants or persons interested, the court shall so order."

Instead of itemizing, as the statutes of many states do, the conditions under which detachment shall be allowed, our statute summarizes all conditions in the word "ought." This presupposes that a large judicial discretion is vested in the trial court. The trial court is in better position than the appellate court to determine the reasonableness or unreasonableness of the exclusion or retention

of the land. We have hereinbefore stated some of the general principles which should control in the exercise of that discretion. On appeal, the judgment of the trial court should not be disturbed unless it clearly appears that the trial court has abused its discretion or disregarded those principles which should govern.

Under the circumstances of this case, we are of the opinion that the findings were fully justified by the evidence, and we cannot say that the trial court abused its discretion. Therefore the judgment of exclusion should be and is affirmed. Pelletier v. City of Ashton, 12 S. D. 366, 81 N. W. 735; Lorimor v. Town of Lorimor, 196 Iowa, 774, 195 N. W. 199; Edgecombe v. City of Rulo, 109 Neb. 843, 192 N. W. 499. It is so ordered.

BURCH, P. J., and POLLEY, CAMPBELL, and BROWN, JJ., concur.

SHERWOOD, J., dissents.