SNOW, et al, Appellants, v. SOUTH SHORE INDEPENDENT SCHOOL DISTRICT, et al, Respondents

(283 N. W. 530.)

(File No. 8086. Opinion filed January 30, 1939.)

*Perry F. Loucks* and *Alan L. Austin,* both of Watertown, for Appellants.

*Arthur H. Hasche,* of Watertown, for Respondents.

SMITH, J. In this proceeding the petitioning owners and occupants seek segregation from an independent school district, and attachment to a common school district, of about twenty-four hundred acres of agricultural land.

Provision for such segregation and attachment is made by section 173 of Chapter 138 of the Laws of 1931. Under the law a petition is heard originally by a statutory committee comprised of the county superintendent of schools, the president of the board of education of the independent school district, and the chairman of the board of the common school district. The Legislature has directed that they "* * * shall consider the interests of the corporations concerned, the convenience and equities of the petitioner, and the permanent school interests, and if they deem it proper, shall grant the petition * * *." Appeal to, and trial de novo in, the circuit court is afforded the petitioners. Section 81 of Chapter 138 of the Laws of 1931. Cf. Camp Crook Independent School District No. 1 v. Shevling, 65 S. D. 14, 270 N. W. 518. The circuit court is enjoined by statute to "* * * enter such final judgment * * * as the circumstances and every right of the case may require * * *." From a judgment of the circuit court an appeal to this court is permitted.

Hearing before the statutory committee resulted in the denial of the prayer of the petition, and that decision was affirmed by the circuit court after trial de novo. We review the judgment under assignments of error which challenge the sufficiency of the findings to support the conclusions of law and judgment.

Plenary power to segregate territory from a school district resides in the Legislature. The statutory committee in the first instance, and the circuit court in the event of an appeal to it, are granted quasi judicial power of segregation. In re Yankton-Clay County Drainage Ditch, Fargo et al v. Aaseth et al., 30 S. D. 79, 137 N. W. 608; Pelletier et al. v. City of Ashton, 12 S. D. 366, 81 N. W. 735; Wickhem et al. v. City of Alexandria, 23 S. D. 556, 122 N. W. 597; Larsen et al. v. Seneca Independent School District, 50 S. D. 444, 210 N. W. 661; In re Common School District in Highmore Ind. School Dist., Brown et al. v. Schenk et al., 54 S. D. 146, 222 N. W. 690. Exclusion is not a matter of right, but rests in the sound discretion of the statutory committee or of the court. In re Formation of Common School District, Wentz et al. v. Bowdle Independent School District et al., 58 S. D. 538, 237 N. W. 763; Nold et al. v. Onaka Independent School District et al., 60 S. D. 482, 245 N. W. 43. The considerations that control the segregation of property from an independent school district are

fixed by statute. As we have stated supra, they shall "* * * consider the interests of the corporations concerned, the convenience and equities of the petitioner, and the permanent school interests * * *." Subdivision 3 of section 173 of Chapter 138 of the Laws of 1931. That the Legislature intended to vest the committee and the court with a broad discretion is apparent from the foregoing comprehensive phraseology it employed, and from the fact that it directs the committee to consider these matters and then grant the petition "if they deem it proper," and that it empowers the court to "enter such final judgment * * * as the circumstances and every right of the case may require." An abuse of this discretion may not be established through demonstration that all of these statutory considerations do not bear in the direction of the challenged decision. Such a judgment will not be disturbed on appeal until it is clearly established that the court has abused the discretion lodged in it. The judgment must stand, unless, when viewed in the light of these legislative standards as a whole, it appears as unsound and arbitrary.

 The findings, so say the petitioners, disclose but a single insufficient reason for retaining the property in the independent district. This single reason, they assert, arises from the fact that it is desired by the district as a source of revenue. As authority for their contention that, when standing alone, this is an insufficient reason, they cite the decisions of this court announcing such a rule as applicable to the severance of real property from cities. Cf. Klosterman et al. v. City of Elkton, 53 S. D. 324, 220 N. W. 910. Analysis has convinced us that the relation of a school district to real property within its boundaries is sufficiently dissimilar to that of a city to its real property to indicate the necessity of a different rule dealing with the exclusion of property from a school district. The functions of a municipality include services to property as such as well as to its inhabitants. The principal reason for the rule counsel cites is found in the inequity of permitting tax levies to defray the cost of such services against property which does not share in the municipal services and benefits. Therefore the fact that property is not benefited or served by a municipality is of controlling significance in determining whether it should be segregated. On the other hand, according to a policy deemed to be fundamental, practically all the property in the state is al-

located among our school districts and makes contributions to the funds with which we "maintain a general and uniform system of public schools wherein tuition shall be without charge, and equally open to all." Direct benefits to property have played little or no part in determining whether it should be included or excluded from a particular district. Much property throughout the state bears no other relation to the district in which it is located than that of constituting a source of revenue. So we conclude that the fact that property is needed as a source of revenue may offer a sufficient reason, standing alone, to justify its retention within a district.

██ The inquiry may not rest here, however. It is said that the balance is heavily weighted in petitioners' favor by the following finding of fact: "That for a period of more than five years prior to the filing of the petition in this matter, the lands described in said petition, used and occupied for the sole purpose for which they were intended, that is, as farms, have failed to produce sufficient revenue upon the basis of a division of crop between landlord and tenant and/or cash rent on the ordinary terms of such division and cash rent in that district to pay the taxes on said land, let alone to maintain the improvements on said land or to make repairs and necessary additions thereto * * *," and by the fact that the findings as a whole disclose that the total tax burden of petitioners would be reduced more than forty per cent by the change sought. In other words, it is said that it is established by these findings that the equities of petitioners outweigh the need of the district for revenue.

That the owners of agricultural land located in independent districts are in distress is a matter of common knowledge. Our people and the Legislature have taken note of the plight of these owners and have attempted to provide relief by such divers measures as the classification of property (cf. Great Northern Ry. Co. v. Whitfield, 65 S. D. 173, 272 N. W. 787, 111 A. L. R. 1475), and by contributions to the cost of maintaining such districts, from other tax sources. The situation of petitioners, if different from that of other owners of grain and stock farms located in other independent school districts, is only different in degree. The problem is state wide, and arises from what is generally denominated as our "agricultural problem," continuing drought, and from a

scourge of pests, and ever increasing demands for higher standards of education. If the share of the cost of essential education that remains as a burden on this character of property is beyond its capacity to produce, the taxpayer must seek his remedy at the hands of the Legislature. Constitutional considerations may be put to one side. We are firm in our conviction that the Legislature never intended that the statutory committee or the courts should attempt to deal piece meal with such a state wide problem through the instrumentality of these inclusion and exclusion statutes. These statutes were enacted to provide a method for the transfer of property from one district to another, predicated upon purely local considerations. Therefore, although we recognize the seriousness of the situation of petitioners, because the equities they stress arise from conditions which obtain throughout the state, and are part and parcel of a problem which only may receive adequate treatment at the hands of the Legislature, we conclude that the trial court exercised a sound discretion in refusing to assign controlling significance to such a consideration.

■ Looking to the situation of the district, we discover these significant factors: The district is conducting an accredited high school, and its physical plant has been developed with that end in view; it has a total assessed valuation of $244,599; the property described in the petition at bar represents one-fifth of that total assessed valuation; if all of the agricultural lands within the district were excluded it would lose one-third of its assessed valuation, and no reason appears of record differentiating the remaining lands from those described in the petition. In connection with these factors, it is noteworthy that the Legislature has expressed its view of the minimum assessed valuation essential to the support of an independent district maintaining a high school. In making provision for the formation of a common school district out of territory included within an independent district, the Legislature inserted a condition requiring that the property remaining in such an independent district, where a high school is maintained, should have an assessed value of at least $500,000. Section 174 of Chapter 138, of the Laws of 1931.

Other matters appear in the findings, bearing slightly both ways. Nothing will be gained by their mention, because we regard the foregoing matters as decisive. In view of the exceed-

ingly low assessed valuation of the independent district as it now exists, and of the high proportion of that assessed valuation which the present petition seeks to segregate, we conclude that it can not be said that the opinion of the trial court is either arbitrary or unsound. The judgment of the trial court is therefore affirmed.

WARREN, P. J., and ROBERTS and RUDOLPH, JJ., concur.

POLLEY, J., dissents.

POLLEY, J. (dissenting). In this case the plaintiffs seek exclusion from an Independent School District, No. 38, and attachment to an adjacent common school district, No. 63. All the owners and residents of the territory sought to be excluded, join in the petition for exclusion. The independent district, No. 38, resists the petition upon the sole ground that in case of exclusion the independent district will be deprived of the revenue it is receiving from No. 63, the territory seeking exclusion.

The petition was filed with the county superintendent of schools. When this is done, subdivision 2 of Section 173, Chapter 138, Laws of 1931 requires that such petition shall be considered by a committee consisting of the county superintendent of schools, the president of the board of education of the independent school district, and the chairman of the other school district to be affected. Subdivision 3 of said section requires this committee to "* * * consider the interests of the corporations concerned, the convenience and equities of the petitioner, and the permanent school interests, and if they deem it proper, shall grant the petition." The proceeding is quasi judicial and requires the exercise of judicial discretion. But in this case the committee grossly abused this discretion and acted wholly arbitrarily. When the proceeding was commenced, and before any hearing had been had or any evidence had been taken, Verda Hubbard, county superintendent, and Mrs. J. L. Blek, the president of the board of education of the independent school district, who constituted a majority of the committee, both declared that they would not grant the petition.

The findings of fact made by the court show overwhelmingly that the taxes levied against the property sought to be excluded for the support of the school in district 38 exceeds the earning ca-

pacity of the property in district 63, with the inevitable confiscation of the property in said district as the result; yet, in the face of this fact, the statutory committee and the trial court, as well, said that in the interest of district No. 63 and the equities of the case, the petition should be denied.

Upon the evidence and the findings of fact made by the court, the petitioners submitted to the trial court, and requested, the following conclusions of law: .

"That with a total assessed value of property in School District No. 38 for 1935 of $244,599, with $88,796.00 representing the assessed valuation of all agricultural lands, that with nineteen resident electors living upon said land, the average assessed valuation of the property per elector was $4,445.00, and the average assessed value of the property in the town of South Shore per elector was $856.00. That if the railroad assessment, the telephone assessment and the electric light company assessment are deducted, the average assessed valuation of the resident elector of the town of South Shore is $650.00 per elector.

"That the tax levied upon the lands of the petitioners and upon the personal property of the petitions occupying said lands for the purpose of maintaining said school system of South Shore Independent School District has resulted in the complete confiscation of the earning value of said land and in all probability would continue to result in the complete confiscation of the earning power of said land if the said land were left in said School District.

"That the said School District No. 38 does not need the tax revenue from the lands involved in this proceeding in order to maintain proper school facilities in said town of South Shore.

"That the interests of the corporations concerned, the conveniences and equities of the petitioners and the permanent school interests will be best served by the reversal of the decision appealed from in this proceeding and that the entire equities in said matter are in favor of said appellants and against the said South Shore Independent School District No. 38, and that the convenience of said persons among the appellants who reside upon said lands and the persons who may hereafter reside upon said lands may be best served by the granting of said petition; that

the reasonable present value of the assets of said 'School District No. 38, independently of uncollected taxes belonging to said School District being in excess of the total indebtedness of said School District that no portion of the indebtedness, bonded or otherwise of School District No. 38 should be transferred to said School District No. 63 upon the granting of said petition and that no part of such indebtedness should follow the lands belonging to said appellants into said school district No. 63 (except such portion thereof as may be represented by taxes levied in 1936 and prior years which are now unpaid and a lien upon said property) and that said lands should be relieved from any further taxes by or on behalf of the said South Shore Independent School District No. 38.

"That said Appellants are entitled to the order and judgment of this Court reversing the decision of the Respondents."

While these proposed conclusions of law are overwhelmingly supported by the evidence and the findings of fact, the court rejected the same and made the following conclusions of law: "That the interests of School District No. 63 of Codington County, South Dakota, and the interests of South Shore Independent School District No. 38 of Codington County, South Dakota, and the interests of those residing upon the premises sought to be removed upon the proceedings herein and those persons who may hereafter reside thereon and the permanent school interests of both of said school corporations and the persons residing within said school corporations and the permanent school interests of all children within school age will be best served by affirming the decision of the special committee before whom this application was originally presented and by denying the application and petition of the appellants herein by retaining within the South Shore Independent School District No. 38 of Codington County, South Dakota, all of the lands now included within the limits of said school corporation," and entered judgment denying the relief prayed for by the petitioners.

This conclusion is not supported by the evidence nor by the findings of fact.

The rule has been well established in city exclusion cases in this state, that where no reason exists for retaining land sought to

be excluded within the city limits, other than the right to tax such land for the purpose of raising money to help carry on the city government, that exclusion will be granted. Knutson v. Centerville, 60 S. D. 20, 242 N. W. 637; Zajicek v. Wessington, 53 S. D. 315, 220 N. W. 913; Klosterman v. City of Elkton, 53 S. D. 324, 220 N. W. 910, and cases cited.

The reason for exclusion in a school district case, where no purpose other than the collection of taxes is shown, is much stronger than in a city exclusion case. Land, even though at some distance from a city or town, may derive many indirect benefits from its proximity to a city or town; such as marketing facilities, condition of roads, etc. But in a school district case like this one there is no reason at all for retaining the territory seeking exclusion, other than the privilege of levying tribute in the way of taxation. The granting of the petition for exclusion does not exempt the property excluded from the payment of school taxes. The territory excluded will still be in an organized school district and will have to contribute proportionally to the support thereof.

The said conclusion of law made by the court should be stricken, the conclusions requested by the petitioners substituted therefor, and judgment entered for the petitioners.