CHICAGO & N. W. RY. CO., Respondent, v. BUCKINGHAM
TRANS. CO. OF COLORADO et al., Appellants

(5. N. W.2d 729.)

(File No. 8439. Opinion filed October 12, 1942.)

4

**Perry R. Moore,** of Minneapolis, Minn., and **M. Q. Sharpe,** of Kennebec, for Appellants.

**Irwin A. Churchill,** and **William S. Churchill,** both of Huron, and **P. F. Gault,** of Chicago, Ill., for Respondent.

SMITH, J. The Public Utilities Commission granted the application of Charles P. Megan as Trustee of the property of the Chicago and North Western Railway Company for a certificate of public convenience and necessity as a Class A motor carrier to, from and between Pierre and all towns and cities located on its railroad west of Pierre in South Dakota. SDC 44.04. Upon appeal to the circuit court (see SDC 52.0502), the order of the Commission was affirmed. Under SDC 52.0505 certain of the protestants have brought the proceedings here for review.

From the outset the appealing protestants have urged that the Public Utilities Commission is without power or jurisdiction to grant such a certificate of convenience and necessity to a railroad company, for the reason that the business of operating as a motor carrier over the public highways is ultra vires the corporate powers of such an applicant. The commission was of the view that such operations, if conducted as a reasonably necessary supplement to railroad services, were intra vires. The circuit court concluded that the legal capacity of the applicant was not in issue. We share the opinion of the circuit court.

In pressing this contention, protestants assume that such motor carrier operations, even though carried on as incidental to or auxiliary of normal railroad service, are not within the powers of a railroad corporation, and reasoning from the statutory direction of SDC 44.0410 that the commission "give due consideration to the likelihood of the proposed service being permanent", submit that the commission acted unreasonably in granting a certificate to such an applicant because its operations might at any time be halted at the instance of the state or of a stockholder because ultra vires in character.

The United States Supreme Court was twice confronted with a similar contention dealing with the powers and duties of the Interstate Commerce Commission and held that Congress did not intend to burden that commission with the duty of passing on the powers of the corporate applicant before granting assent to the construction of an extension, Claiborne-Annapolis Ferry Co. v. United States et al., 285 U. S. 382, 52 S. Ct. 440, 76 L. Ed. 808, or before granting permission to one carrier to acquire control of another, New York Central Securities Corporation v. United States, 287 U. S. 12, 53 S. Ct. 45, 77 L. Ed. 138. Congress directed the Interstate Commerce Commission to find that "the applicant is fit, willing and able properly to perform the services proposed", before granting an application for a certificate of convenience and necessity to operate as a motor carrier in interstate commerce. 49 U.S.C.A. § 307(a). Notwithstanding such direction, predicated upon Claiborne-Annapolis Ferry Co. v. United States, supra, the Interstate Commerce Commission has concluded that it is not competent to inquire into the powers of a corporate applicant. Seaboard Air Line Railway Co. Motor Operation, Vol. 17 M.C.C. (I.C.C. Rep.) 413. Under distinguishable statutes the Pennsylvania court sustained the jurisdiction of its commission to pass on the issue. Haugh & Keenan Storage & Transfer Co. v. Pennsylvania Public Utility Commission, 133 Pa. Super. 175, 2 A.2d 548. And see 5 U. of Pittsburgh L. Rev. 192.

██ That the legislature, if it had seen fit, could have required the Public Utilities Commission to deal with the issue as a step in determining whether a certificate should issue, we may assume without deciding. See Prentis v. Atlantic Coast Line Company, 211 U. S. 210, 29 S. Ct. 67, 53 L. Ed. 150; 24 Cornell L. Q. 13; Application of Dakota Transportation Co., 67 S. D. 221, 291 N. W. 589. It has, however, indicated no such an intention. The Public Utilities Commission is made up of practical men "informed· by experience" whose primary function it is to pass expert' judgment on issues of fact. "Public convenience and necessity" presents the commission with such an issue. Application of Dakota Transportation Co., 67 S. D. 221, 291 N. W. 589, 591; 28 Mich. L. Rev. 276. Corporate capacity is not presented as a factor of convenience and necessity. See 28 Mich. L. Rev. 144. In directing this administrative agency to consider whether the proposed service will be permanent, we gather that the legislature but intended to emphasize certain, specific, practical or economic factors the commission is required to consider in finding the ultimate fact of convenience and necessity.

██ The contention of the protestants that to sustain the power of the Public Utilities Commission to grant a certificate of public convenience and necessity to carry on an ultra vires business is to permit that commission to enlarge the corporate powers of an applicant, is untenable. By its order directing that a certificate of convenience and necessity issue, the commission neither grants nor adjudicates corporate power.

By an assignment somewhat more broad in scope than the exceptions appearing in the record of the·proceedings below, protestants point out particulars wherein the application of the railroad for a certificate fails to comply with the·requirements of SDC 44.0408, assert that the statute is mandatory in character and that, therefore, the proceedings are a nullity for the reason that the jurisdiction of the commission was not invoked.

The statute, SDC 44.0408, provides:

"\* \* \* A motor carrier making application for such certificate or permit shall do so in writing, separately for each route, which petition \* \* \* shall specify the following.

"(1) The name and address of the applicant and the names and addresses of its officers, if any;

"(2) The public highway or highways over which, and the fixed termini between which, or the regular route or routes over which it intends to operate;

"(3) The kind of transportation, whether passenger or freight or both, together with a full and complete description of the character of the vehicle or vehicles to be used, including the seating capacity of any vehicle to be used for passenger traffic and the tonnage capacity of any vehicle to be used in freight traffic;

"(4) The proposed time schedule;

"(5) A schedule of the tariff or rates desired to be charged for the transportation of freight or passengers, or both;

"(6) A complete and detailed description of the property proposed to be devoted to the public service;

"(7) A detailed statement showing the assets and liabilities of such applicant;

"(8) Such other or additional information as the Commission may by order require."

The protestants insist that the application embraces three separate routes and fails to sufficiently specify the vehicles and property to be devoted to the public use and the proposed time and rate schedules.

■■ The provisions of a mandatory statute must be followed in order that the proceeding to which it relates will be valid. A directory statute dealing with a proceeding, may not be ignored to the prejudice of a party thereto who makes timely objection. In the light of these principles and assuming the petition to be defective in certain of the specified respects, we conceive the issue to be two-

fold. Is the statute mandatory or directory in character? If directory, were the protestants prejudiced because of the defects in the petition which were called to the attention of the commission?

The frequent use of such words as "shall", "must", and "may" by the legislature without regard to their literal meaning compels the courts to resort to construction for the purpose of discovering its actual intention. The principles which serve as guides in determining that intention are easier to state than to apply.

"* * * Whether a statute is mandatory or directory depends on whether the thing directed to be done is of the essence of the thing required, or is a mere matter of form. Accordingly, when a particular provision of a statute relates to some immaterial matter, as to which compliance with the statute is a matter of convenience rather than substance, or where the directions of a statute are given merely with a view to the proper, orderly, and prompt conduct of business, it is generally regarded as directory, unless followed by words of absolute prohibition; and the same is true where no substantial rights depend on the statute, no injury can result from ignoring it, and the purpose of the legislature can be accomplished in a manner other than that prescribed, with substantially the same results. But a provision relating to the essence of the thing to be done, that is, to matters of substance, is mandatory, and when a fair interpretation of a statute, which directs acts or proceedings to be done in a certain way, shows that the legislature intended a compliance with such provision to be essential to the validity of the act or proceeding, or when some antecedent and prerequisite conditions must exist prior to the exercise of power, or must be performed before certain other powers can be exercised, then the statute must be regarded as mandatory. * * *" 59 C. J. § 631, p. 1074. And see Stephens et al. v. Jones et al., 24 S. D. 97, 123 N. W. 705.

"Public policy often requires that minor omissions and failures by officials shall not make void all their proceed-

ings; otherwise, government in some special feature might come to a standstill or result in confusion. This liberality of construction is not necessary when the duty to act rests upon the individual, as his omission and failure will apply only to himself and not bring confusion or damage to a whole community." People v. Graves, 277 N. Y. 115, 13 N. E.2d 599, 601.

Lord Campbell states: "No universal rule can be laid down. * * * I believe, as far as any rule is concerned, you cannot safely go further than that in each case you must look to the subject-matter; consider the importance of the provision that has been disregarded, and the relation of that provision to the general object intended to be secured by the Act; and upon a review of the case in that aspect decide whether the matter is what is called imperative or only directory." Howard v. Bodington, 2 P. D. 203.

Tested by these principles the directory character of the statute is revealed.

To avoid the public loss and inconvenience incident to uneconomic competition in the field of transportation, the legislature, SDC 44.04, has erected a gateway through which none may enter until the public has need of motor carrier service. To gain entry, an applicant must establish by evidence at a hearing that the requisite public need exists. SDC 44.0410. The commission is charged with the duty of causing notice of that hearing, together with a copy of the application, to be served upon parties described in the statute who are declared to be "interested parties." SDC 44.0410. The commission before whom the application is heard is the guardian of the public interest and its control of the subject matter does not cease with the grant of a certificate. Power to grant a certificate is conditioned upon the need of the public for the service similar to that described in the application and not upon the accuracy of the matters specified therein. Those matters remain within the reach of its regulatory powers. SDC 44.0402 to and including 44.0407. From a consideration of the act as a whole, it is made apparent that the application is intended to pro-

vide the commission and "interested parties" with a "bill of particulars" of the applicant's proposals to the end that adequate preparation for the hearing on the vital issue of convenience and necessity may be made.

That every benefit sought by the legislature through the operation of the provision will be gained if the statute receives directory interpretation is manifest. Under such an interpretation, the provisions of the statute will direct and control the procedure of the commission. Rights and interests of those who deem themselves prejudiced by a faulty application will be safeguarded by timely objection. If mature reflection suggests new points of view or the necessity for further development of the facts, a party may present his contentions to the commission by petition for rehearing. SDC 44.0418 and 52.0501. On the other hand, if the statute be viewed as peremptory, it will fail to more effectively serve the legislative purpose, and will become the mischievous device of astute counsel. Under such a literal interpretation, form rather than substance may become the criteria of judgment.

At first glance, because the statute deals with an application by an individual for a personal privilege, one might logically judge that a strict or literal interpretation is impelled. More critical consideration of the relation of the application to the essence of the proceedings causes it to take on a different complexion. The contention that the proceedings are nullified because of the insufficiency of the application will not be urged if a certificate is denied. That contention will be made in proceedings which have resulted in an order that a certificate issue. At that stage it will have been determined that "public convenience and necessity" for the proposed service exists. Thus it becomes plain that the omission of the applicant, if the statute be interpreted as mandatory, would render an order made by a public servant in the public interest vulnerable to attack founded on that which is not of basic significance. It seems unthinkable to us that the legislature intended the proceedings to be voided by a mere defect in a bill of particulars.

■ We have, therefore, been brought to the conclusion that the statute was enacted for the purpose of setting up an orderly and efficient procedure and that a liberal interpretation will best serve the revealed legislative purpose. We hold the statute to be directory. In arriving at this conclusion, the case of Erie R. Co. v. Public Utilities Commission of Ohio, 116 Ohio St. 710, 157 N. E. 382, upon which protestants rely has been carefully considered.

The protestants challenged the application before the commission on two grounds, namely, (a) because it covered three separate routes and (b) because a definite time schedule was not proposed.

■■ Assuming that the petition disregards the statutory direction, in that it covers three separate routes, we are of the opinion that the commission was warranted in overruling the objection of protestants. It was apparent from the outset that if three routes were involved and therefore three applications were required, the ultimate determination as to each route must rest in part on the same evidence. In such a situation we do not doubt the power of the commission, in the exercise of a sound discretion, to consolidate applications for hearing and thus avoid duplication of effort. The result in the proceeding at bar is the same as though that procedure had been followed and we are unable to discern prejudice to the rights of protestants.

■■ A fixed time schedule is not required of all Class A motor carriers. The statute, SDC 44.0402, describes such a carrier as "operating between fixed termini, or over a regular route, under regular rates or charges, based upon either station to station rates or upon a mileage rate or scale." Whether a fixed time schedule is to be required in a particular instance is a matter for determination by the commission. SDC 44.0403. The purpose of the application was to render co-ordinated railroad and truck service. The application reads: "Time schedule will be worked out and put into effect to co-ordinate motor vehicle operations with the railroad operations of applicant in this territory, so that

there may be complete co-ordination of motor vehicle service with applicant's rail and express service. A minimum of daily service is contemplated." A more definite specification would have served no useful purpose. We, therefore, deem the application to be in substantial compliance with the statute. However, if we entertained the opposite view, we would be forced to rule against protestants because we fail to discover, and the briefs fail to indicate, wherein they have been prejudiced by the alleged disregard of the statute.

The remaining contentions of the protestants deal with the issue of public convenience and necessity. The assignments assert (a) that the finding of public convenience and necessity is not supported by evidence, and (b) that if that factor is established, the commission acted unreasonably and arbitrarily because it failed to grant existing motor carriers opportunity to supply the proposed service.

The argument under the first of these contentions is that the commission predicated the exercise of its discretion on the benefits to accrue to the applying railroad and not on public need for the service. A study of the record, including the report of the commission, has convinced us that although it considered other factors, the preservation of the railroad service in the described territory as an essential element of its transportation system influenced the conclusion of the commission. Thus these assignments present the question: Was consideration of that factor within the competency of the commission?

A point suggested in the brief of the applicant offers an avenue by which we might avoid consideration of this question. The only protestant appealing who is a "party affected" by the order of the commission, as we understand the sense in which those words are employed in the language of SDC 52.0505, and who is therefore authorized to appeal to this court, is operating as a motor carrier under a Class B certificate between Pierre and Rapid City. In our opinion this statute limits the right of appeal to those parties who can affirmatively show legal injury. See

14

Barnum v. Ewing, 53 S. D. 47, 220 N. W. 135. That the remaining parties who have attempted to appeal are vitally interested in the principles involved is plain to be seen. They have, however, failed to point out any legal injury they will suffer from the order. It is also apparent from the record that the only qualified appellant has failed to indicate any prejudice from the commission's order in so far as that order authorizes operations beyond Rapid City, and that it cannot be seriously argued that the finding of convenience and necessity for Class A motor truck service over the segment of the proposed route between Pierre and Rapid City is not supported by substantial evidence. That we may not disturb a finding so supported is settled. Application of Dakota Transportation Co., supra. However because we are not convinced that the commission would have exercised its discretion even to this limited extent had it not been influenced by the factor of public interest in safeguarding railroad service to the territory involved, we have determined to consider the question we have phrased.

 The commission is not clothed with an unlimited discretion. The statutes from which its powers are derived serve also to mark the boundaries of those powers. As we have indicated supra, its power to grant a certificate is conditioned upon proof of the existence of public convenience and necessity for the proposed service. SDC 44.0410. In its common or technical use that phrase is employed with reference to a concept of lesser scope and content than those denominated "public welfare" and "public interest." As ordinarily used, public convenience and necessity has reference to a particular aspect of public welfare or interest. In SDC 44.04 it deals with the public interest in transportation. That chapter was enacted to safeguard the public interest in transportation by regulating a particular kind of common carrier. The end in view, however, was to so adjust particular operations to the total public need for transportation as to best serve the public interest. It sought to exclude from the highway all those

whose operations would not make a real contribution to the efficiency and dependability of the transportation system of the territory or community. It recognizes that in a real sense transportation confronts the public with a single, over-all problem, and that the addition or subtraction of any character of service must be viewed in its relation to that problem as a whole. This point of view prompted the pronouncement that it is public convenience and necessity, and not that of an individual or a group of individuals, whether they be operators or users of transportation service, that the statute comprehends. Application of Dakota Transportation Co., supra.

In conditioning the authority to grant a certificate on a finding of public convenience and necessity our legislature added these words: "* * * In determining whether or not a certificate or permit should be issued, the Commission shall give reasonable consideration to the transportation service being furnished or that will be furnished by any railroad, or other existing transportation agency, and shall give due consideration to the likelihood of the proposed service being permanent and continuous throughout twelve months of the year and the effect which such proposed transportation service may have upon other forms of transportation service which are essential and indispensable to the communities to be affected by such proposed transportation service or that might be affected thereby." SDC 44.0410.

We doubt whether these words added or subtracted from the powers of the commission. They do, however, render certain that the object of the legislature was to safeguard the public interest in its transportation system as a whole.

Predicated on this statute, we held the commission was warranted in denying a certificate because the circumstances permitted an inference by the commission that the proposed operations would withdraw needed volume from indispensable transportation agencies which were

furnishing reasonably adequate and comparable services. Vander Werf v. Board of Railroad Commissioners, 58 S. D. 586, 237 N. W. 909. We now hold that the commission, in the exercise of its discretion, may consider whether a proposed service will promote the public interest by strengthening and preserving an indispensable transportation service. That there was basis in the circumstances established by the evidence for a rational conclusion that purely incidental movement of l. c. l. freight between stations by truck would not only improve the character of applicant's railroad services to the public, but would also add vitality to a failing indispensable transportation service, we are convinced.

The remaining contention of protestants finds answer in the matters we have just considered. The principle that, all things being equal, the commission would act unreasonably in failing to grant a motor carrier agency operating in the territory first opportunity to provide needed additional motor carrier service may be assumed. The principle can have no application if the established circumstances make room for the commission to conclude that the public interest will best be served by a different course. The private interests of the carrier must be subordinated to the public interest. That we deem the evidence sufficient to warrant an inference by the commission that the public interest would be served by permitting the applicant to carry on some incidental truck movements of freight between its stations as a part of its railroad operations, has been made sufficiently clear.

The judgment of the circuit court is affirmed.

All the Judges concur.