DUNKER et al., Appellants v. BROWN COUNTY BOARD OF EDUCATION, Respondent

(121 N.W.2d 10)

(File Nos. 10009, 10010. Opinion filed April 15, 1963)

Rehearing denied May 8, 1963

**Agor, Bantz, Siegel & Barnett,** Aberdeen, for Appellants.

**R. M. Schutz,** Aberdeen, for Respondent.

RENTTO, J. After the Brown County Board of Education adopted and obtained approval of a county master plan, it adopted a substitute plan within the master plan by which 26 districts would be reorganized as Warner School District No. 230. Petitions were filed by these districts requesting that the substitute plan be submitted to the electors of the proposed district. In the election held for this purpose on February 23, 1961, 13 districts voted in favor of the proposed reorganization.

At a special meeting of the County Board of Education held on February 27, 1961, it determined that 12 of the districts favoring the proposal would be a feasible district. The other district in favor of reorganization was omitted because it was not contiguous. The Board also directed the county superintendent to issue an order creating the Warner Independent No. 230 School District. This she did on February 28, 1961, with an amendment thereto issued on March 2, 1961, correcting an error in the legal description of the area included in two of the districts involved.

The above named appellants on May 24, 1961, filed one appeal to the circuit court from the Board's action approving the district and another from its action directing the superintendent to issue an order creating the district and her actions thereunder. After a consolidated trial of these two matters the circuit court entered its judgments dismissing the appeals. Appellants appeal from both judgments. One opinion decides both matters.

They claim that the actions of the County Board from which they appeal should be held invalid because of: (1) a procedural defect in the formulation and adoption of the master plan; (2) defects in the proceedings by which the new district was established; and (3) an abuse of discretion by the County Board in de-

termining that the new district was feasible. Where necessary the relevant facts will be set out in the separate treatment of each contention urged by appellants.

After the preparation of its preliminary written plans, maps and charts for reorganization, the Board fixed the following dates and places for hearings thereon—at Columbia on June 19, at Groton on June 20, at Frederick on June 26, at Hecla on June 27 and at Aberdeen on July 10, all in 1959 and at 8:30 p. m. The hearings were held as scheduled and apparently all of them were well attended. However, notice of these hearings was not given by publication as prescribed by Sec. 11, Ch. 8 of Ch. 41, Laws of 1955, now SDC 1960 Supp. 15.2011. It is urged that because of this omission the master plan and all subsequent proceedings dependent thereon are void.

■■ The formation of school districts is entirely within the power of the legislature. Its actions in regard thereto do not come within the due process clause of either the state or federal constitutions. Thies v. Renner, 78 S.D. 617, 106 N.W.2d 253. By the act here involved the legislature delegated that function to the County Board of Education. The actions of the Board in carrying out such duty are likewise not subject to the due process clause. Consequently there is no constitutional requirement that the notice in question be given. See Anderson v. Peterson, 78 N.D. 949, 54 N.W.2d 542.

■■ There remains the question whether the holding of such meetings upon published notice is mandatory or merely directory. That is a matter of legislative intent. The act in question provides:

"When the county board has prepared its preliminary written plans, maps and charts for reorganization of school districts, it shall fix dates and places for hearings thereon and give notice thereof to all the residents of the districts affected and all interested parties. Such notice shall be given by the county superintendent by publication at least once in a newspaper of general circulation in the district, or districts, at least ten days but not more than thirty days prior to the date set for such hearing.

"At the hearing the county board shall explain the proposed reorganization plan, with the advantages and any disadvantages resulting therefrom and shall show the cost of the current and the proposed programs of education as nearly as may be estimated on the basis of current costs. A statement of the proposed method of adjustment for property, assets, debts, and other liabilities shall be made. In such hearing, any resident of the county or of any affected district in an adjacent county may be heard with reference to the proposed changes.

"The county board shall consider any suggestions made in the public hearing, and shall make any revisions or modifications in its written plans as it deems necessary and shall thereupon adopt its master plan."

While the word "shall" is generally regarded as mandatory it is often given a directory or permissive meaning in order to give effect to the legislative intent. 50 Am.Jur., Statutes, § 32; 82 C.J.S. Statutes §§ 376, 380.

■ ■ The principles involved in determining that intent were discussed by this court in Application of Megan, 69 S.D. 1, 5 N.W.2d 729. It is there stated:

"Accordingly, when a particular provision of a statute relates to some immaterial matter, as to which compliance with the statute is a matter of convenience rather than substance, or where the directions of a statute are given merely with a view to the proper, orderly, and prompt conduct of business, it is generally regarded as directory, unless followed by words of absolute prohibition; and the same is true where no substantial rights depend on the statute, no injury can result from ignoring it, and the purpose of the legislature can be accomplished in a manner other than that prescribed, with substantially the same results."

This case also teaches that greater liberality of construction is indulged in this regard when the omission or failure is on the part of a public official than when the duty disregarded rests on an individual.

■ The hearings provided for are informational in character and purpose. While the residents of the county at such hearings may make suggestions as to how the county should be reorganized, the Board is at liberty to ignore the ideas submitted. Also the number of such hearings and their location is addressed to the Board's discretion. Obviously these hearings are only a convenience in the exchange of information between the Board and interested members of the public. As such they are merely incidental to the chief purpose of the Board's function which is the formulation of a master plan. Accordingly we hold the provision in question to be directory.

■ It is our observation that school reorganization proposals incite a keen public interest. News media give them much publicity by which the community is made aware of the plans and proposals of the Board, including news stories about public meetings scheduled by the Board as the record shows occurred in this case. Generally they are a favorite topic of discussion by the adult members of the area involved amongst themselves and with members of the Board. As a consequence the public hearings mentioned in the statute lose much of their apparent importance. We do not believe the legislature intended that the failure to publish the notice in question should render the master plan and the subsequent proceedings void. By SDC 65.0202(1) we are required to liberally construe the school reorganization law and all proceedings under it with a view to effect its objectives.

■ After approving the proposed Warner Independent No. 230 School District the County Board on March 15, 1961, voted to reconsider its previous action. This occurred about two weeks after the county superintendent had issued her order and amendment thereto creating the district. While nothing further appears to have been done in reconsideration of the action, appellants contend that this nullified the Board's previous action of approval. We do not agree.

The school law in effect when these actions were taken, SDC 1960 Supp. 15.2015 states:

"If the electors of each district approve the reorganization as hereinafter provided the county superintendent

shall issue an order creating such new school district, which shall from the date of issuance of such order be an existing school district, although it shall not operate as such until the members of its school board have been elected and have organized as provided in this chapter. Such order shall be mailed to the State Superintendent, the county auditors concerned, and to the chairman or president of each district affected by the order."

Obviously, the mailing of the order is required to give official notice of the creation of a new district and the demise of the old ones, to those concerned with them in the fields of supervision, revenue or administration. This seems essential to orderly procedure.

As to the type of reorganization we are here concerned with the same statute provides: "the plan shall go into effect, excluding any disapproving district or districts, upon the decision of the county board that the plan is still feasible." By virtue of SDC 1960 Supp. 15.2015 it became an existing school district upon the issuance of the county superintendent's order. A literal interpretation of the provision concerning such order suggests that it does not issue in this kind of reorganization because the "electors of each district" voting on the plan did not approve the reorganization. However, it can also be read to mean that the order issues if the "electors of each district" in the area declared by the Board to be a feasible district approved the plan. We think the latter view was intended by the legislature.

If it were otherwise there would be no statutory declaration as to the point of time when the new district became "an existing school district." Nor would there be any provision for notifying those concerned officially with the new district or the districts being eliminated, of the changes made. These features are as essential when the district is created by the Board's determination of feasibility as when it comes about by a vote of the electors. The time when the reorganization takes effect and the new district becomes operative under SDC 1960 Supp. 15.2005(6) is the same whether the final approval action was "by the county board of education or the electors." Consequently, we hold that the legislature intended a county superintendent's order

to issue in this type of reorganization, and that after its issuance the area is an existing school district which can be done away with only in the manner provided by law.

The approved master plan included a detailed statement concerning the disposition of the assets and liabilities of each district concerned. The substitute plan involving the Warner area district reorganization approved on April 5, 1960, contained this provision concerning the adjustment of properties:

> "All cash of (on) hand and other assets now held by the existing school districts will be appraised and the total value will be credited to the original school district and then prorated as tax payment at not more that (than) fifteen per cent of the total per year until completely used."

The petitions for an election on the substitute plan incorporated this statement. Appellants contend that the statement is inadequate rendering void the substitute plan itself and the election held thereon.

We think appellants may not have determined in this proceeding the sufficiency of the statement in the substitute plan. They could have had this question decided by appealing to the circuit court from the Board's decision of April 5, 1960, approving the plan. SDC 1960 Supp. 15.2023. This they did not do and the time for taking it expired long before these appeals were filed. In Thies v. Renner, 78 S.D. 617, 106 N.W.2d 253, we held this provision for judicial review of the Board's decision by appeal to be the exclusive remedy.

In these circumstances those desiring an election on the substitute plan were justified in utilizing the questioned statement from the plan in their petitions for an election. There would be better reason to challenge their action if they had done otherwise. SDC 1960 Supp. 15.2014 requires only that the petition "give a statement of a proposed method of adjustment of property assets, debts, liabilities." The actual adjustment of these matters is made by the Board after the change takes effect. SDC 1960 Supp. 15.2022. Before that time the areas going into the new district are not definitely known.

Appellants find fault with the canvass made of the votes and claim that this defect prevents the formation of the new district. The minutes of the Board show that it held a special meeting on February 24, 1961, for the purpose of canvassing the poll books and found them in order. In the record appears a tabulation listing the districts voting in the election and the number of votes cast in each of them "For" and "Against" the proposal. At the bottom of this is written "Tabulation of votes in poll books." It is not signed by anyone and there is no proof as to who wrote the statement. The tabulation shows that 13 of the districts favored the proposal. It appears as one of the exhibits certified by the county superintendent of schools to be the record of all proceedings in the matter before the County Board of Education.

The statute provides that the County Board shall canvass the votes and "shall certify the vote cast at each polling place." SDC 1960 Supp. 15.2015. There is no claim or suggestion that the tabulation as made does not correctly reflect the results of the election. All seem agreed that it is an honest return of the votes cast. Appellants claim only that the certification provision of the statute is mandatory and since it was not complied with there is no record upon which the Board could proceed further with the matter. Their position is untenable.

In Brown v. Dakota Public Service Co., 68 S.D. 169, 299 N.W. 569, this court in commenting on the effect of mistakes or omissions of election officials said:

"the election statutes so far as the acts and duties of such officials are concerned, should be held to be directory unless otherwise expressly declared by statute, or it is made to appear that such acts and conduct affected the merits of the election and prevented an honest and free expression of the will of the voters."

We hold that the duty of the County Board in its canvass of the vote to certify the results was directory. That is the rule generally. 29 C.J.S. Elections § 222 and § 238; 18 Am.Jur., Elections, § 257. Consequently this omission did not vitiate the election.

At the time the Board created this new district. it had the right to create a district from those districts voting in favor of the plan if it found that the plan is still feasible. SDC 1960 Supp. 15.2015. It is urged that the new district is not feasible, the thrust of this being that it is not economically feasible. This is a practical legislative determination which has been entrusted to the discretion of the Board, not to the courts. The wisdom of its decision is not our concern, since we are not at liberty to substitute our judgment for that of the county board on a matter inherently legislative. If the rule were otherwise the circuit courts would become county boards of education deciding matters that are nonjudicial.

The creation, enlargement, consolidation or dissolution of school districts is a legislative function. For the courts to interfere would be a violation of the separation of powers provision of Art. II of our State Constitution. Champion v. Board of County Commissioners, 5 Dak. 416, 41 N.W.739. We realize that this court has on numerous occasions held to the contrary. Some of these cases are cited in Snow v. South Shore Independent School District, 66 S.D. 379, 283 N.W. 530. To the extent that they are in conflict with our holding here they are overruled. Only when the legislative agency has acted unreasonably, arbitrarily, or has manifestly abused its discretion in exercising legislative authority may the courts interfere with the action of the county boards in this area. Glenham Independent School District v. Walworth County Board of Education, 78 S.D.63, 98 N.W.2d 348. See also School District No. 3 v. Callahan, 237 Wis. 560, 297 N.W. 407, 135 A.L.R. 1081; In re Joint School District No. 2, 15 Wis.2d 517, 113 N.W.2d 141; In re Community School District of Malvern, 250 Iowa 1240, 98 N.W.2d 737; Green v. Webster County Board of Education, Iowa, 115 N.W.2d 856.

The constitutional separation of powers cannot be done away with by legislative action. Bandy v. Mickelson, 73 S.D. 485, 44 N.W.2d 341, 22 A.L.R.2d 1129. Consequently, SDC 1960 Supp. 15.2023 and 15.2344, providing for de novo trials when county school board matters are appealed to the circuit court may not be given a literal construction. To do so would be to presume that the legislature intended to confer upon the courts powers inconsistent with the discharge of their inherent

judicial functions. This we may not do. Application of Dakota Transportation, Inc., 67 S.D. 221, 291 N.W. 589. That provision must be applied in the light of this constitutional limitation.

 Appellants contend that the school district formed by the county board is such a departure from the master plan, the proposal set forth in the petition for election, the standards adopted by the State Board of Education and the provisions of SDC 1960 Supp. 15.2007 and 15.2010, as to show a manifest abuse of discretion on the part of the county board in declaring the new district to be feasible. We do not share that view. In our opinion the criterion mentioned are merely expressions of general policy aimed toward the establishment of a better and less costly school system. In this type of reorganization no defined minimum standards are involved. The legislature has not attempted to make the action of the county board dependent upon the existence of any facts or circumstances. Rather, it was empowered to put the plan into effect as to the districts voting for the plan upon its decision that the plan is still feasible.

Prior to this reorganization, the little town of Warner with a small outlaying rural area maintained a grade and high school with an instructional staff consisting of three grade school teachers and four high school teachers, one of whom was the superintendent. The tax base was about $650,000. The school was operated on income from direct taxation supplemented by tuition and small amounts from state aid and apportionment, and other sources. The school district operated without a deficit and had a surplus in its treasury. It had a four-year high school although the same courses were not offered each year.

By adding eleven contiguous districts, the tax base was increased about $3,000,000. The county board could reasonably have concluded that this would permit an enlargement of the teaching staff and curriculum and generally provide for a better school at the same or less cost, or at a more nearly equal cost, to the patrons of the district and be a step toward the ultimate goal of reorganization without immediately accomplishing the ideal. Some of the district's objectives may still be absent, but this does not make what was done arbitrary, unreasonable or show a

manifest abuse of discretion in determining that the new district was feasible.

We have examined the other rulings of the trial court that are complained of but do not find in them any action that was prejudicial.

Affirmed.

ROBERTS and HOMEYER, JJ., concur.

HANSON, P. J., and BIEGELMEIER, J., dissent.

HANSON, P. J., (dissenting). I am unable to concur.

The scope of judicial review over administrative action is not involved. No party raised the question in the trial court or in this court. It is a constitutional, rather than a jurisdictional, question which has been injected into the case by the majority of this court and by them determined without benefit of a hearing, briefs or oral argument. As such it may be considered dictum. Munns v. Stenman, 152 Cal.App.2d 543, 314 P.2d 67. Furthermore, the extent of this far reaching dictum is not indicated for the edification and future guidance of the bench and bar. Except for the case of Snow v. South Shore Ind. Sch. Dist., 66 S.D. 379, 283 N.W. 530, which is expressly overruled, the majority sweeps with a wide broom in also overruling any and all other cases in conflict therewith. However, none of the other cases are mentioned. This is somewhat paradoxical. For example the case of Snow v. South Shore was recently cited by this court and quoted with approval in Glenham Ind. Sch. Dist. v. Walworth County Bd. of Ed., 78 S.D. 63, 98 N.W.2d 348, which case, in turn, is quoted with approval of the majority opinion. Also see Ellis v. Herrick Ind. Sch. Dist., 71 S.D. 7, 20 N.W.2d 516; Arnold v. Hubbard, 63 S.D. 454, 260 N.W. 621; Olson v. Pulaski Common Sch. Dist., 77 S.D. 416, 92 N.W.2d 678; Larsen v. Seneca Ind. Sch. Dist., 50 S.D. 444, 210 N.W. 661; Brown v. Schenk, 54 S.D. 146, 222 N.W. 690; Wentz v. Bowdle Ind. Sch. Dist., 58 S.D. 538, 237 N.W. 763; Krueger v. Ind. Sch. Dist. of Groton, 61 S.D. 82, 246 N.W. 246; Camp Crook Ind. Sch. Dist. v. Shevling, 65 S.D. 14, 270 N.W. 518; Williams v. Stanley Co. Board of Equalization, 69

S.D. 118, 7 N.W.2d 148, and countless others. What effect the majority opinion has on these cases is left to speculation and conjecture.

Likewise, no one is contending that the legislature by virtue of a de novo review statute may validly authorize a circuit court to substitute its judgment for the discretionary judgment of an administrative board on questions of legislative policy. In this regard, it may be conceded that SDC 15.0233, providing for de novo trials on appeal from school board matters, in a proper case, could be interpreted to mean that such statute by virtue of constitutional limitations allows only a limited judicial review of administrative action. 4 Davis, Administrative Law Treatise § 29.10, p. 184. It may also be conceded that the scope of review by the courts in these matters should not extend beyond questions as to whether the county board of education acted within its constitutional or statutory powers, whether its determination is supported by substantial evidence, and whether the board's determination is reasonable and not arbitrary. Application of Dakota Transportation, Inc., 67 S.D. 221, 291 N.W. 589. Nevertheless, in the light of the above limited and unquestionably constitutional review the purported school reorganization in this case cannot reasonably be sustained.

Ours is a government of laws and not of men. This is a fundamental concept of our form of government. In essence, it means that personal and property rights must be determined according to stated and defined rules of law rather than by the unbridled whim and fancy of administrative officials and agencies. Accordingly, the legislature cannot constitutionally delegate unrestrained power and unlimited discretionary authority. To do so would constitute an unlawful delegation of legislative power. "In order to avoid an unlawful delegation of power, the legislative authority must declare the policy or purpose of the law and, as a general rule, must also fix the legal principles which are to control in given cases by setting up standards or guides to indicate the extent, and prescribe the limits, of the discretion which may be exercised under the statute or ordinance by the administrative agency. * * *" 1 Am.Jur.2d, Administrative Law, § 113, p. 913. Our school reorganization act does not violate this

fundamental principle. The legislature has established definite standards and requirements for school reorganization and, on review, it is the function and duty of the courts to determine whether those legislative standards, requirements, and limitations have been met.

To determine this question a supplemental statement of facts is required. In this regard the record shows that the Brown County Board of Education employed Dr. Clifford P. Hooper, an expert in public school administration to survey the educational needs of Brown County and to help prepare a feasible Master Plan of School Reorganization. After numerous surveys and considerable study a Master Plan was prepared and approved by the Board. It divided Brown County into four districts, the largest one being the Aberdeen district with a total assessed valuation of 46 million dollars. Warner was included. In conjunction with the Master Plan the Board prepared an informational pamphlet entitled "Planning Schools for Brown County." 15,000 copies were printed and circulated among the residents of Brown County. It contained recommendations considered necessary to overcome existing deficiencies and set forth standards required to place the county school system on a sound educational and financial basis. One of those minimum needs was expressed as follows:

> "(6) * * * If school districts are to be capable of sustaining at least a defensible minimum program of education and build needed school buildings, it is essential to incorporate concentrations of local wealth in the same unit with concentrations of children. An assessed valuation of at least $5,000,000 is a reasonable minimum standard for administrative units in Brown County."

After the Master Plan was adopted the Brown County Board of Education gave their preliminary approval to a substitute plan of reorganization for the Aberdeen District which proposed to create Warner District No. 230. The proposed Warner District contemplated a consolidation of 26 districts having a total assessed valuation of 6.7 million dollars. An election on the substitute plan was held on February 23, 1961 in the 26 affected districts. 12 voted in favor and 13 against. One of the districts voting in

favor of the plan was not contiguous to the other 12. On February 27, 1961 the Board evidently considered the substitute plan was still feasible, excluding the disapproving districts, and authorized the creation of Warner District out of the 12 contiguous districts voting in favor of the plan. It is the status of this substitute district created by the Board out of the proposed substitute plan of reorganization for the Aberdeen District which is in question.

On March 15, 1961 the County Board voted to reconsider the feasibility of the Warner District. At its next regular meeting in April the Board corrected and clarified the minutes of the March 15th meeting as follows:

"* * * the motion to reconsider the feasibility of the Warner Proposed District * * * means that the said area reverts back to its original state, where there existed thirteen districts for and thirteen districts against, and that it is now awaiting a further decision by the Brown County Board of Education to declare it a feasible or a non-feasible district. In further correction a statement should have been included advising the County Superintendent of Schools that she should advise the persons involved that the election for school officers of the new Warner Proposed District be cancelled."

The Board did not thereafter reconsider or determine the feasibility of the Warner District and has never finally approved the same.

In my opinion the County Board of Education clearly had power and authority to reconsider the feasibility of the proposed Warner District. See Schull Construction Co. v. Board of Regents of Ed., 79 S.D. 487, 113 N.W.2d 663. In the absence of such determination and final approval by the Board the proposed Warner School District could not legally be established.

Reorganization of school districts in this state may be accomplished in one of two ways; (1) by action of the electors, or (2) by action of the County Board of Education. Differing statutory requirements and procedures apply to each method.

The effective creation of the substitute Warner District required final favorable action and approval by the Brown County Board of Education—not the electors. School districts of this nature go into effect "upon the decision of the county board that the plan is still feasible." SDC 1960 Supp. 15.2015. Therefore, the order of the Superintendent of Schools purporting to establish the Warner School District had no force and effect whatsoever and should not have been issued. According to SDC 1960 Supp. 15.2015 the County Superintendent is authorized to issue an order creating a new school district **only** when "the electors of **each** district approve the reorganization." This is reasonable and logical. If the electors in all the affected districts vote in favor of a proposed school district no discretionary power remains to be exercised. The only action necessary for the creation of the new district is a perfunctory order of the County Superintendent of Schools to carry out the will of the electors after the votes have been canvassed. However, in the election on the proposed Warner District 13 of the affected districts disapproved the plan. Therefore, the creation of the new district depended entirely upon the final discretionary decision of the Brown County Board of Education that the plan was still feasible. The final creation and establishment of the new district by said Board was accordingly governed by SDC 1960 Supp. 15.2005(6) which provides as follows:

"All school district reorganization shall take effect and the new school district shall become operative on the first day of July following the date of the final approval action by the county board of education * * *."

A final determination of feasibility by the board of education is a condition precedent to the creation of a school district of this nature. This condition has not been complied with and the purported creation of the Warner School District by the unauthorized order of the County Superintendent of Schools is an absolute nullity.

The record amply reflects reasons why the Board wanted to reconsider the feasibility of the Warner School District. This Board had previously informed the voters and taxpayers of Brown County that no reorganized school district should contain

less than $5 million assessed valuation. It had just refused to approve the proposed Westport-Barnard District with an assessed valuation of 4 million dollars because it was too small. Also the Board's own experts, Drs. Hooper and Huls, testified the new Warner District was not economically feasible and the undisputed evidence shows the proposed District could not maintain an accredited school conforming to current minimum requirements without an annual deficit of over $25,000 from taxable income on maximum mill levies. Furthermore, such deficits do not include the additional cost of constructing new classrooms needed and necessary upon establishment of the district. Therefore, it would appear without question that the new district fails to comply with the mandatory minimum requirement of reorganization set forth in SDC 1960 Supp. 15.2007(3) to the effect that each school district shall contain sufficient taxable valuation to support an educational program meeting current minimum requirements for accreditation.

Consequently, it is my opinion that the purported creation of Warner School District No. 230 does not conform to the spirit or comply with the specific statutory requirements of school reorganization for districts of this nature.

BIEGELMEIER, J. (dissenting). I agree the judgments appealed from should be reversed for the reason stated in Judge HANSON'S dissenting opinion, that is, the County Board had authority to reconsider its resolution before any other steps had been taken to implement it and further, accepting the guide for review in the majority opinion the County Board's first resolution approving the reorganization as to 12 of the 26 districts voting in favor of the plan was such an abuse of discretion as to be reviewable by the court.

Merely crowding more students into unsatisfactory quarters is no improvement and does not meet the legislative intent or the standards of a better school, which is the goal of the reorganization program. I believe the pupils and patrons of this area are entitled to better school facilities than those in the Board's presently approved plan and one that will meet their own and state standards. The County Board's consulting experts on education contemplated and prepared, and the Board after much study and discussion adopted, plans and standards of reorganization of its

school districts in accord with state law. See SDC 1960 Supp. 15.2007(3) as to taxable property requirements. The Board had set up a minimum of a $5 million tax basis. The voters voted on an approved $6.7 million tax basis; they are getting about half of that. I cannot but feel that the proposed district is not feasible, i. e., capable of being utilized successfully in accord with state standards and the Board abused its discretion in approving this small district.

This court in Thies v. Renner, 78 S.D. 617, 106 N.W.2d 253, refused injunctive relief in a school reorganization dispute because a right of review existed under the provisions of SDC 1960 Supp. 15.2023 and here repeats that pronouncement. That same SDC 1960 Supp. 15.2023 and another section SDC 1960 Supp. 15.2344, both cited in the majority opinion remain in the Code, but the scope of review has now been further limited in effect to be of no practical efficacy in school reorganization proceedings.