

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN 11, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

February 15, 1949

Hon. Jesse James
State Treasurer
Austin, Texas

Opinion No. V-773

Re: Legality of use of meter
machines in lieu of the
decalcomania stamps in
stamping the amount of
the tax on packages of
cigarettes.

Dear Sir:

Your letter requesting our opinion on the above captioned matter reads as follows:

"Will you please advise whether under the cigarette tax statutes this department, the Comptroller of Public Accounts, and the Cigarette Tax Stamp Board could, without further legislation, . . . authorize the use of metering machines in lieu of the decalcomania stamps now used in stamping the amount of the tax paid on each package of cigarettes."

We have carefully reviewed the Cigarette Tax Act, which is codified as Article 7047c-1, Vernon's Civil Statutes, and have arrived at the conclusion that the Comptroller of Public Accounts and the Cigarette Tax Stamp Board, without further legislation, cannot authorize the use of a metering machine in lieu of the decalcomania stamps which are now used in stamping the amount of the tax paid on each package of cigarettes.

The language used in the Cigarette Tax Act compels the above holding. The following excerpts from this Act, as well as the remaining parts of the entire Act as a whole clearly negative the authority to use a metering machine.

"'Stamp' shall mean the stamp or stamps printed, manufactured or made by authority of the Board as hereinafter defined, and <u>issued, sold or circulated</u> by the Treasurer and by the use of which the tax levied hereunder is paid. . . . 'Coun-

terfeit Stamp' shall mean any stamp, label, print, tag or token which evidences, or purports to evidence, the payment of any tax levied by this Act, and which stamp, label, print, tag or token <u>has not been printed</u>, manufactured or made by authority of the Board as hereinafter defined and/or <u>issued, sold or circulated by the Treasurer</u>.

"...

"... Payment of such tax shall be evidenced by stamps purchased from the Treasurer and securely affixed to each individual package of cigarettes covering the tax thereon as imposed by this Act; ... <u>Cigarette stamps shall be sold by the Treasurer in unbroken sheets of one hundred (100) stamps only</u> and shall be purchased from and sold only by said Treasurer, ... and the offender does not possess sufficient unused stamps to cover his unstamped stock of cigarettes, then and in that event the offender may purchase the required stamps from any distributor through a requisition from the Comptroller in order that his unstamped stock of cigarettes may be stamped immediately and under the direction of the Comptroller. ... The Comptroller shall have the power and authority in the enforcement of this Act to recall any stamps which have been sold by said Treasurer and which have not been used and it shall be the duty of said Treasurer upon receipt of such recalled stamps to issue stamps of other serial numbers therefor. The purchaser of any stamps shall be required to surrender any unused stamps for exchange upon demand of said Comptroller. (Emphasis added throughout)

"Sec. 3. A 'Cigarette Tax Stamp Board' composed of the Board of Control of this State, designated hereafter as the 'Board', is hereby created and the said

Board shall be and is hereby required to design and have printed or manufactured new cigarette tax stamps of such size and denominations and in such quantities as may be determined by the said Board. The stamps shall be so manufactured as to render them easy to be securely attached to each individual package of cigarettes; provided that a different and separate serial number or combination letter and number may be assigned to and printed on the margin of each sheet of stamps, or other methods of identification be adopted as the Board may decide. The printing or manufacturing of the stamps shall be awarded by competitive bid and the contract shall be awarded to the person submitting the lowest and best bid that will afford the greatest and best protection to the State in the enforcement of the provisions of this Act.

". . . that said stamps shall be supplied by said Treasurer to all distributors holding a permit in the State at a discount of four per cent (4%) from the face value;
. . .

". . . and the Treasurer is hereby required to redeem at face value any unused cigarette tax stamps lawfully issued, prior to such change in the design, which are in the possession of any bona fide owner, by exchanging at face value cigarette tax stamps of the new design. Provided that whenever a change is made in the design of the stamps every person holding stamps of the old design shall be required to send them to the Treasurer for exchange at face value for stamps of the new design. . . It shall be unlawful for any person to have in his possession any stamps of an old design after sixty (60) days from the date of issue of any new design; . . . it shall be the duty of the Treasurer upon receipt of any new design of stamps authorized to be printed by the Board to designate the date of issue of such new design. . . .

"Provided that any cigarette tax stamps may be exchanged only when proof satisfactory

to said Treasurer is furnished that any
stamps offered to said Treasurer in ex-
change were properly purchased and paid
for by the person offering to exchange
such stamps; provided, further, that
stamps which are effaced or mutilated in
any manner may be refused for acceptance
in exchange by said Treasurer.

"The Treasurer shall keep a record
of all stamps sold by him or under his di-
rection, or all stamps exchanged by him
and of all refund made on stamps purchased.

"Orders for cigarette tax stamps
shall be sent direct to the Treasurer and
it shall be the duty of the Treasurer to
invoice the stamps ordered to the purchas-
er upon a form invoice to be prescribed by
the Treasurer, which invoice shall be is-
sued in triplicate and numbered consecu-
tively. . . .

"Stamps in unbroken sheets of one hun-
dred (100) stamps may be exchanged, with
the Treasurer only, for stamps of a differ-
ent denomination. . . .

"Sec. 3B. A distributor may order
stamps shipped with draft attached to the
bank with which distributor regularly trans-
acts business. The Treasurer is hereby au-
thorized to ship stamps in compliance with
such orders to any such bank authorized to
do business in Texas under the laws of this
State and the United States. Such stamps,
together with the invoice required under
Section 3 of the Cigarette Tax Law, shall
be attached to a form draft to be prescrib-
ed by the State Auditor. . . .

". . . .

". . . Said report shall also show
the number, denomination and face value of
unused stamps on hand at the beginning of
the month covered in the report, the number,

denomination and face value of stamps
purchased and received, the number, de-
nomination and face value of stamps
sold, used, lost, stolen, exchanged, re-
turned to the Treasurer, or disposed of
in any other manner and the number, de-
nomination and face value of stamps on
hand at the end of the month covered in
the report. . . .

"(b) The Treasurer may promulgate
rules and regulations hereunder provid-
ing for the refund on stamps which by
reason of damage become unfit for sale
or use. . . .

"The Director . . . shall . . .
personally supervise the printing or man-
ufacturing of all cigarette tax stamps
under the contract as awarded by the Board
of Control and he shall have possession
and custody of, and be responsible for, all
specification plans, photographs, impres-
sions, drawings, electroplates, printing
stones and any and all other property or
equipment that may provide a means of repro-
ducing, manufacturing or printing of cigar-
ette tax stamps in the design selected by
the Cigarette Tax Stamp Board. The said Di-
rector shall also be charged with the re-
sponsibility of inspecting the stamps after
such stamps have been manufactured or print-
ed and all sheets of stamps that do not
meet the specifications required in the con-
tract shall be rejected and destroyed by or
under the direct personal supervision of
said Director; and the Director shall have
control of said stamps and be responsible
therefor until delivery is made to the Treas-
urer."

The proposed plan of metering the stamps on
to the cigarette packages admittedly would be optional
with the dealer and not all of the dealers would exer-
cise the option of this method. So that there would
necessarily be in use both methods if the metering
method is permissible. Your specific question is cate-
gorically answered in the negative.

We are not unmindful of the classification of statutory provisions into mandatory and directory provisions. The accepted rule, generally, is that the provision for the doing of an act within a particular time or in a particular way merely is a directory provision pertaining to convenience rather than substance, unless such provision is followed by words clearly importing negation of any other time or method. City of Cincinnati vs. Board of Education, 27 N.W. (2d) 413; State ex rel Carpenter vs. Barber, 198 So. 49; Tate vs. State, 141 S.W. (2d) 351; Application of Megan, 5 N.W. (2d) 729.

Authorities supporting this general rule could be multiplied indefinitely. It is the opinion of this office that the Act by the meticulous terms of its provisions as to the method of enforcing the cigarette tax has necessarily negated the adoption of any other method by the Comptroller and the Board. In any event, the line of demarcation between mandatory and directory provisions of statutes is not easily drawn, and no one may cast an exact formula to govern all questions. Each case must be governed in the final analysis by the context of the entire statute. Even if the present question were fairly debatable, nevertheless we would still be impelled to hold as above stated.

The matter cannot be determined upon a substantive procedural basis. Substantive statutes are not necessarily mandatory, nor are procedural statutes necessarily directory. All of our Supreme Court rules are procedural, but nevertheless all of them are generally mandatory.

The thin line of demarcation between mandatory and directory statutes is accentuated by many familiar situations.

The Board of Control, with certain exceptions, is required to purchase supplies for the different institutions and departments upon competitive bids after advertising. (Art. 634, V. C. S.) If such should be purchased without complying with such provision, it would not follow that the provision would be classed as a directory one.

The Banking Code prohibits excessive loans to borrowers. (Chap. V, Art. 7). If an excess loan should be made, it is a valid, collectible loan, but the statute is not for that reason a directory one.

Our statutes regulate marriages very fully, yet a marriage not in compliance with such statutes is valid. The regulations are mandatory nevertheless.

Our nepotism statute (P.C. 432) is mandatory, yet an appointment of one in violation thereof is not invalid.

So here, if the agencies charged with the enforcement of the stamp tax provision should ignore the method prescribed and pursue another equally as effective in the enforcement of the law, the result would not be void.

These results, however, would not justify this office in advising an officer or board to disobey a statute even though no penalty on the one hand or hurt on the other would follow.

<u>SUMMARY</u>

In the absence of further legislation, the Comptroller of Public Accounts and the Cigarette Tax Stamp Board are not authorized to permit the use of metering machines in lieu of the decalcomania stamps now being used in stamping the amount of the tax paid on each package of cigarettes. Art. 7047c-1, V. C. S.

Yours very truly,

ATTORNEY GENERAL OF TEXAS

By Ocie Speer
Assistant

OS:mw:wb

APPROVED:

ATTORNEY GENERAL